LANGFORD, *Appellant*, v. FEW.

Division One, November 15, 1898.

1. **Executions:** CONSTABLE'S RETURN: WHEN SUFFICIENT. The constable's return was: "Executed the within writ . . . . by reading to W. L. Few and scheduled the property of defendant. Execution returned not satisfied." To this was added the oath of three appraisers, and a "copy of the schedule of W. L. Few," stating that he "sets forth upon oath the following described property to the amount of $300 worth as scheduled." This was followed by a description of the property, but the "copy of the schedule" was not signed or sworn to by Few or any one. *Held* that this was not a sufficient return to authorize the issuance of an execution by the clerk of the circuit court, under the provisions of section 6287, Revised Statutes 1889, which provides that "no execution shall be issued out of the court where the transcript is filed . . . until an execution shall have been issued by the justice directed to the constable . . . and returned that the defendant had no goods or chattels whereof to levy the same." Nor did a sale made by the sheriff under such circumstances convey the execution debtor's title.

Langford v. Few.

2. ———: ———: ———: NULLA BONA.  "Not satisfied" is not syn-
onomous 'with *nulla bona,* and does not answer the requirements of
the statute, which are that the constable must make a thorough search
for property of the execution debtor whereof to make the levy.

3. ———: ———: ———: PRESUMPTION IN FAVOR OF OFFICERS.  It
can not be presumed that the circuit clerk did his duty and ascer-
tained. before he issued his execution, that there was a proper return
of *nulla bona,* by the constable.  A presumption can not be indulged
that a fact exists which the statute requires to exist in order to give
the officer power to act, and without which he is prohibited from
acting.

4. ———: ———:———: COLLATERAL ATTACK: SUIT IN EJECTMENT.
And such defects in the constable's return will defeat a recovery in a
suit in ejectment, brought by one who purchased the land at the
sheriff's sale under the execution issued out of the circuit court, though
he be a stranger to the proceedings in the justice's court.  Nor will
the defendant be denied the right to plead such defective return on
the ground that it is an irregularity in the judgment and execution
and not open to collateral attack.

*Appeal from Ripley Circuit Court*—HON. JOHN G. WEAR,
Judge.

AFFIRMED.

*J. L. Fort* and *C. L. Keaton* for appellant.

(1)  The execution offered in evidence, and the
return of the constable thereon, with the other proceed-
ings of the constable under said execution, is sufficient
to show that the respondent had no property subject to
said execution; and the return thereon is, in fact, a
return of *nulla bona* in this proceeding.  R. S. 1889,
secs. 4907, 6286–7; *Bacon v. Beven,* 44 Miss. 293; *State ex
rel. v. Brady,* 53 Mo. App. 202; *Hale v. Talbott,* 86 Ind.
447; *State v. Still,* 11 Mo. App. 283.  (2) Irregularities
in the judgment and execution under which the land
was sold can not affect the title of the appellant, who is
a stranger to those proceedings, and had no notice of
irregularities, if any existed, at the time of his purchase.
*Whitman v. Taylor,* 60 Mo. 127; *Sachse v. Clinging-*

smith, 97 Mo. 406; *Brown v. Walker*, 11 Mo. App. 226; *Leonard v. Sparks*, 117 Mo. 103. The sheriff's deed was sufficient on its face, and the facts *aliunde* the deed support, instead of impeach, its recitals. *Huhn v. Lang*, 122 Mo. *loc. cit.* 606.

*J. C. Sheppard* and *W. W. Perkins* for respondent.

(1) This sheriff's deed no where recites the fact that an execution was ever issued by the justice of the peace, or delivered to the constable, or that he ever made a *nulla bona* return thereon, which were necessary prerequisites to the issuance of an execution from the circuit clerk's office. *Burke v. Miller*, 46 Mo. 258. (2) It was necessary that the transcript execution should not only have issued, but should have been returned by the constable *nulla bona*, in order to pass the title to the lands in the sheriff's deed. (3) The return of the constable does not amount to a *nulla bona* return. He must recite the acts done by him, so that the court may determine whether the return is sufficient. R. S. 1889, sec. 6287; *Burke v. Miller*, 46 Mo. 258; 7 Am. and Eng. Ency. of Law, 155; *Burke v. Flurnoy*, 4 Mo. 116; *Conce v. Munday*, 3 Mo. 373. The contention of appellant that he was a stranger to the proceedings in the justice's court, and that he can not be affected by any irregularities in such proceedings, this being a collateral proceeding, is not tenable, for the reason that the question in this case is the direct question as to whether there was or was not a *nulla bona* return, a fact upon which his title, under the law, stands or falls. *Jordan v. Surghnor*, 107 Mo. 520.

MARSHALL, J.—Action in ejectment to recover the south half of the northwest quarter of section 8, township 24, range 1, East, in Ripley county. The answer is a general denial and plea of homestead rights. The

reply is a general denial.   Plaintiff's evidence is: 1st, a deed from the sheriff of Ripley county, dated October 18, 1893, recorded March 2, 1894, reciting that on November 7, 1892, Wm. P. Morrison recovered a judgment against defendant before a justice of the peace in said county; that a transcript of the judgment was filed in the circuit clerk's office on the 13th of December, 1892, and upon which an execution was issued on March 18, 1893, directed to the sheriff of Ripley county, and under which he levied on the land in controversy, and sold it to plaintiff for twenty-five dollars; 2d, a transcript of the judgment of the justice of the peace in favor of Morrison and against Few.   Attached to and forming a part of the transcript is a recital that an execution was issued on the 13th of December, 1892, and a further statement signed by the justice of the peace, as follows: "March 13, 1893, execution returned, not satisfied, with a schedule of defendant's property, to the amount of two hundred and twenty three and 87–100 dollars."   It was agreed that the monthly rents and profits is four dollars per month.

The defendant's evidence is: 1st, a deed from Mrs. M. J. Morrison and seven others, without date, but acknowledged October 2, 1886, and recorded June 24, 1889, conveying an undivided ten-elevenths interest in the north half of the northwest quarter and all of the south half of the northwest quarter that lies north of Big Barren Creek, in Sec. 28, T. 25, N., R. 1, E., to defendant, in consideration of three hundred and ninety-five dollars, in trade, and one hundred and fifty and 45–100 dollars; 2d, the testimony of defendant that he took possession of the land in January 1888, but did not have the deed recorded until he came to Ripley county; that he stayed on the place two years; made one crop, then moved off, returned in the fall and the

next spring sold it to J. W. Shipp on the 9th of April, 1890; that W. P. Morrison exhibited the sheriff's deed to him but he did not examine it; that he sold the place for some stock, traded the stock and with the proceeds, and money he borrowed from the county, he paid for the land.   In rebuttal, plaintiff introduced the deed from Few to Shipp, the deed is not set out in the record, but it is there stated to be a warranty deed, recorded, but where or when is not shown.   Plaintiff then offered the complete transcript of the justice of the peace in the case of *Morrison v. Few*, including the execution and return of the constable.   The return is the material part and is as follows: "Executed the within writ in the county of Ripley, state of Missouri, on the 23d day of December, 1892, by reading to W. L. Few, and scheduled the property of defendant.   Execution returned not satisfied.   P. E. Whitwell, Const.," with the following added: "Copy of oath of Appraisers. F. W. Bell, W. D. Raywinkle and J. T. Hutson, Sr., appraisers, being duly summoned to appraise the property of W. L. Few, before entering upon their duties, make oath and say they will faithfully and impartially appraise the property exhibited to them by the said Few." (Signatures, and seals, and oaths attached), to which is also underwritten the following: "Copy of the Schedule. January 21, 1893. State of Missouri, County of Ripley.   To the Justice Court of Kelley township, of J. W. Hufstedler, J. P.: W. L. Few sets forth upon oath the following described property to the amount of three hundred  dollars worth as scheduled, to wit:" (Here follows an itemized list of personal property with the values set opposite each item, and aggregating $239.40, but there is no signature or jurat of any one attached to it). Defendant objected and the court excluded the transcript.   Plaintiff then offered again the transcript on file in the circuit clerk's office and also

Langford v. Few.

the note upon which the judgment of the justice of the peace was based.

The plaintiff asked and the court refused to give the following instructions:

"1. The court declares the law to be, that if the court finds from the evidence and admissions of the parties that the defendant is the common source of title and that the plaintiff has acquired the title of defendant by a sheriff's deed of and for the said lands, then the court should find for the plaintiff and assess his damages and value of the monthly rents and profits as shown by the evidence, unless the court should find from the evidence that the land in controversy was the homestead of the defendant at the time of the sale thereof under the execution and judgment shown in evidence.

"2. The court further declares the law to be that the sheriff's deed offered in evidence and the transcript of and from the justice upon which the same is based, offered in evidence, can not be impeached or invalidated in this collateral proceeding of ejectment for any mere irregularity or seeming informality therein contained."

The court of its own motion gave the following instructions:

"1. The court, sitting as a jury, declares the law to be, that if it appears from the evidence that defendant was, at the time of the institution of the suit before J. W. Hufstedler, the justice of the peace, a citizen and resident of Ripley county, and has been a resident of the county ever since and was at the time of the filing of the transcript of said justice's docket in the office of the clerk of the circuit court of Ripley county, and at the time of suing out of the said clerk's office the execution under which the sale was made at which the plaintiff became the purchaser of the land of

defendant, and there had not been an execution issued by the justice directed to some constable, and a return by such constable of such execution that the defendant had no goods or chattels whereof to levy the same, then in that case the finding and verdict should be for the defendant.

"2.  The court further declares the law to be that unless the court find from the evidence that the former homestead claimed by the defendant was acquired by the filing of the deed of conveyance thereto in the clerk's or recorder's office for record and entering into the possession thereof as such homestead by the defendant before he contracted the debt mentioned in the transcript execution and deed of plaintiff, although the court may find the land in controversy claimed as a homestead was acquired with the proceeds of the sale of the first mentioned land claimed as his homestead, and unless the court finds both such facts from the evidence, the court will find for the plaintiff, unless the court should further find from the evidence that plaintiff did not acquire the title under the sheriff's deed."

There was judgment for defendant and plaintiff appealed.

## I.

It thus appears very vaguely that defendant owned an undivided ten-elevenths of the north half of the northwest quarter and all of the south half of the northwest quarter that lies north of Big Barren creek, in section 28, township 25, north, range one, east, and that about 1890 he sold something, the record does not clearly show what, but presumably that property, to J. W. Shipp.  No explanation is vouchsafed by this record as to what defendant did with the proceeds, but from the instructions it seems to be assumed that

he purchased the land in suit with them.   It is not shown where or how defendant acquired title to the land here involved.   Both parties, however, concede that they claim title through defendant.   The defendant in his answer claims it as a homestead, but the facts disclosed by the record are so meager that it is impossible for this court to ascertain with any degree of satisfaction whether or not he ever owned this land or was ever in possession of it.   The statement of the case above, is a full and fair statement of every material matter contained in the transcript.   It nowhere appears whether or not the defendant is a housekeeper or head of a family so as to be entitled to claim homestead rights under chapter 80, Revised Statutes 1889 or exemptions under section 4903, or whether he was in such favored condition in December, 1892, when the execution from the justice of the peace was issued against him, or in April, 1893, when the sheriff executed the writ of *fieri facias*.   It seems, however, to be assumed by counsel for both parties that defendant was the head of a family, and we will treat the case in that way.

The proposition of law involved is whether a return by a constable on an execution issued by a justice of the peace, which says: "Executed the within writ in the county of Ripley, State of Missouri, on the twenty-third day of December, 1892, by reading to W. L. Few, and scheduled the property of defendant. Execution returned not satisfied.   P. E. Whitwell, Const.," with the oath of the three appraisers, and a copy of a schedule which recites that W. L. Few sets forth upon oath the following described property to the amount of $300 worth as scheduled (describing it), but which is not signed or sworn to by any one, is a sufficient return to authorize the issuance of an execution by the clerk of the circuit court and a sale of real estate under the provisions of section 6287,

Revised Statutes of Missouri 1889, which provides, "but no execution shall be sued out of the court where the transcript is filed, if the defendant is a resident of the county, until an execution shall have been issued by the justice, directed to the constable of the township, . . . and, if not, to any constable in the county, and returned that the defendant had no goods or chattels whereof to levy the same."

This provision has been on our statute books since as early as 1835.    It first underwent judicial interpretation in *Coonce v. Munday*, 3 Mo. 374, and it was insisted that the recital in the execution issued by the circuit clerk that the constable had made a *nulla bona* return was sufficient, and at any rate that the fact might be shown *aliunde*.    But McGirk, C. J., denied that the circuit clerk had the power to make such a recital, and construing the provision of the statute quoted said: "The law expressly forbids an execution to issue until one has issued from the justice," and added that "the law makers had an undoubted right to prescribe the terms on which the execution might or should issue, and when they have done so, no one can dispense with those terms."    It was argued, however, that it was a mere irregularity which could not be attacked collaterally.    But the court said: "In the case before us, the law says the execution can have no existence."    The question arose there, just as it does here, in an ejectment suit, where the purchaser at the execution sale—a stranger to the original case—was the plaintiff and the defendant was the same in both cases.

The question again came before this court by a bill in equity brought by the purchasers at the execution sale.    McGirk, J., speaking of filing transcripts of justices' judgments in the office of the circuit clerk, and issuing executions thereon, said, "The act of the

General Assembly authorizes this to be done, but it requires that before any execution can issue on the judgment thus filed in the clerk's office an execution shall have issued from the justice, and returned no goods to be found. In this case the only evidence of the facts were found on the justice's docket or transcript, which says an execution had issued, and that the constable returned *not satisfied* by levying on the property of Burk and making some $29— the return does not show that the defendant, Burk, had no more goods, etc. The law is express that no execution can go from the clerk's office till a return of *nulla bona* is made to an execution issued by the justice." *Burk v. Flurnoy*, 4 Mo. 116.

In *Wineland v. Coonce*, 5 Mo. 297, it was pointed out that a lien could be obtained by filing the transcript, but that no execution could issue from the circuit court until there had been a return of *nulla bona* by the constable. In *Illingworth v. Miltenberger*, 11 Mo. 80, it was decided that a *nulla bona* return was not necessary on a mechanic's lien judgment rendered by a justice and a transcript filed in the circuit court, because no execution could issue from the justice.

In *Linderman v. Edson*, 25 Mo. 105, the constable's return was *nulla bona* as to one of two defendants but it was not stated which, and no return as to the other. The question arose in an ejectment suit, brought by the purchaser at the execution sale. Held, that plaintiff acquired no title by the sheriff's sale.

In *Burke v. Miller*, 46 Mo. 258, the court again pointed out that the legislature had two objects in view, 1st, to create a lien, and 2d, to enforce the lien, but that the enforcement was stayed until there was a return of *nulla bona* by the constable, and that the purpose of the stay was to prevent unnecessary seizure and sale of the defendant's real estate.

Appellant, however, insists that the return of the constable above quoted is a compliance with the statute. The statute expressly prohibits the issuance of an execution by the circuit clerk until an execution has been issued by the justice of the peace, "and returned that the defendant had no goods or chattels whereof to levy the same." The return of the constable in this case is that he executed the writ, "by reading it to W. L. Few, and scheduled the property of defendant. Execution returned not satisfied." The oath of .the appraisers amounts to only a preliminary. It does not appear that they made any appraisement. The schedule of defendant is not signed or sworn to and does not on its face purport to be all the property he owned, nor is it pretended that the values are those fixed by the appraisers. It rather conveys the idea that defendant was selecting this particular property under section 4907, Revised Statutes of Missouri 1889, and is not at all inconsistent with the possibility that he had other property which, perhaps, the officer had seized along with that selected. The return of the officer does not exclude the idea that defendant had other property. The return required of the constable by the statute is, "that the defendant had no goods or chattels whereof to levy the same." This officer simply says he read the writ to defendant, scheduled his property and returned the execution not satisfied. The return of *nulla bona* has a defined meaning in law. It signifies that the officer made strict and diligent search and was unable to find any property of the defendant liable to seizure under the writ, whereof to ·levy the same. A return of not satisfied conveys only the idea that it has not been paid. In *Dillon v. Rash*, 27 Mo. 243, a return of *nulla bona* was held necessary. In *Franse v. Owens*, 25 Mo. 329, a return of "no property found of

defendant in said townships whereof to levy'' was held
to comply with the statute.  In *Burk v. Flurnoy*, 4 Mo.
l. c. 117, a return of ''not satisfied by levying on the
property of Burk and making some $29,'' was held
insufficient because it did not show that Burk had no
more property, the court saying a *''nulla bona''* return
is requisite.  See, also, *McDowell v. Clark*, 68 N. C.
118; *Harman v. Childress*, 3 Yerg. 327; *Metcalf v.
Gillet*, 5 Conn. 400; *Williams v. Amory*, 14 Mass. 20;
*Russ v. Gilman*, 16 Me. 209; *Walsh v. Anderson*, 135
Mass. 65; *Perry v. Dover*, 12 Pick. l. c. 211.  Freeman
on Executions, sec. 356, says: ''The most usual obsta-
cle met by officers is their inability, after due search,
to discover property subject to the writ.  When this has
been the case, and it becomes necessary to return the
writ wholly or partly unexecuted, the officer must ex-
onorate himself by stating clearly and unequivocally
that the writ is returned unsatisfied,'' citing as author-
ity a great number of cases.  Herman on Executions,
p. 387, says: ''An officer has no right to make the
return *(nulla bona)* without having made an effort to
find any of the property of the defendant.  A general
report that the defendant has no goods will not excuse
such a return.  It may be made after one thorough
search.''  ''Not satisfied'' does not cover the legal
requisites of a strict and thorough search and a failure
to find any property belonging to defendant whereof
to levy the writ.  It is not synonomus with *nulla bona*,
and does not answer the requirements of the statute.
The case of *Jordan v. Surghnor*, 107 Mo. 520, must be
read in the light of the facts in that case, which were
that the defendant was not a resident of the county in
which the judgment was rendered, and in such cases
no execution is required by statute to be issued by the
justice and returned *nulla bona* by the constable for the

manifest reason that *prima facie* there would be no personal property on which the constable could levy.

## II.

Plaintiff, however, contends that it will be presumed that the clerk of the circuit court did his duty, and that he did not issue the execution until there was a proper return of *nulla bona* by the constable.. The answer is plain.    As against a positive prohibition of the statute, there can be no presumptions, and there is no room for a presumption in this case, for the plaintiff himself introduced the return made by the constable, which, as we have held herein, was not in compliance with the statute.    There is a difference between indulging a presumption in favor of an officer having done a duty which the law casts upon him, and indulging a presumption that a fact exists which the statute requires to exist in order to give the officer power to act, and without which he is prohibited from acting.    A person who buys real estate that is sold under this statute gets no title unless the statute is strictly followed, for, while it gives a remedy to the creditor, it also protects the debtor.    It is further contended that this is a mere irregularity in the judgment and execution under which the land was sold, which can not be attacked in this collateral proceeding.    As the references herein contained to the cases decided by this court and in other jurisdictions clearly show, just such contentions were unsuccessfully made under similar conditions of the records. The reason is that it is not merely an irregularity.    It goes to the root.    It is the corner stone upon which plaintiff's right to recover rests, and without which he has no standing in any court.    The sheriff's deed to plaintiff does not even attempt to supply "the missing

link,'' for it only recites the justice's judgment cn the 7th of November, 1892; the filing of the transcript in the circuit clerk's office on the 13th of December, 1892, and the issuance by the circuit clerk of the execution by him on the 18th of March, 1893. There is no recital whatever that any execution was ever issued by the justice of the peace, much less a recital of a *nulla bona* return—and in view of the fact that the judgment was rendered on November 7th, and the transcript was filed on December 13th, 1892, there could not have been an execution issued and returned *nulla bona* by that time. It is evident from these recitals that the plaintiff in that judgment by this action was taking advantage of the first object of the statute, securing a lien; but this deed furnishes no proof or basis for presumption that the second prerequisite of the statute, an execution and *nulla bona* return, had been complied with. In this view of the case it is not necessary to discuss the other assigned errors.

The judgment of the circuit court is affirmed. All concur.