𝕽𝖎𝖈𝖍𝖒𝖔𝖓𝖉.

LEACHMAN, TREASURER, V. BOARD OF SUPERVISORS OF PRINCE
WILLIAM COUNTY.

March 13, 1919.

1. COUNTY  TREASURER — *Liability on Payment of Unauthorized
County Warrants.*—To the report of a commissioner of ac-
counts auditing the accounts of a county treasurer the treas-
urer excepted. The trial court overruled the exception. The
chief question involved was whether the treasurer should have
credit for sundry warrants paid by him for which the board of
supervisors denied the liability of the county. Blank warrants,
in book form similar to check books, were filed in the clerk's
office of the county. Without authority from the board of
supervisors, or from any other source, the chairman of the
board signed his name on a number of these blank warrants,
as chairman, and not at or during any meeting of the board,
and when the board was not in session. The clerk or deputy
clerk thereafter, likewise without authority from the board
or any source, and not at or during any session of the board,
signed the clerk's name to these warrants. In a number of
the warrants so signed was inserted in the blank spaces left,
the date, payee's name, such amount as he desired, and the fund
on which drawn. This was done without authority from or
knowledge of the board. On a number of these warrants the
payee's indorsement was genuine, but a number contained the
forged indorsement of the payee. These warrants were made
payable to persons who had no claims against the board, and
in whose favor no warrants had been ordered. The trial
court held that the treasurer was not entitled to credit for
the warrants upon which the payee's name had been forged.
*Held:* Affirming the judgment of the lower court, that the il-
legality of the warrants themselves was an insuperable obstacle
to their payment. This being so, the Supreme Court of Appeals
did not deem it necessary to consider what was the effect of
the forging of the indorsements of the payee on the warrants.

2. APPEAL AND ERROR—*Order Overruling Exceptions to Report of
Commissioner of Accounts.*—An appeal lies to the Supreme
Court of Appeals from an order of an inferior court overrul-
ing exceptions to and confirming a commissioner of account's

report upon the accounts of a county treasurer, which disallowed credits claimed by the treasurer of $893.78 and awarded costs against him. The judgment of the lower court was, in effect, a judgment against the treasurer for upwards of $900, and was a final judgment and appealable under the provisions of section 3454 of the Code of 1904. The case is to be distinguished from *Owen* v. *Owen,* 109 Va. 432, 63 S. E. 990, in which the party appealing had the right to file a bill surcharging and falsifying the account.

3. ISSUES TO JURY—*Exception to Commissioner's Report—Appeal and Error—Harmless Error.*—Where the report of the commissioner of accounts upon the accounts of the treasurer of a county was excepted to by the treasurer, the court directed a jury to be summoned to try the issue in the cause. That issue was whether the treasurer was entitled to certain credits for sums paid by him upon warrants not authorized by the board of supervisors. The issue presented a question of law which should have been decided by the court and not submitted to a jury. Moreover, there is no authority for summoning a jury on the hearing of the exceptions to the report of a commissioner. It was error, therefore, to have summoned the jury, but the error was harmless, as the court itself properly passed upon the exception to the commissioner's report, and it is the correctness of the court's ruling on the exceptions which is the matter in controversy on appeal.

4. PUBLIC OFFICERS—*Liability of Fiscal Officers.*—For reasons of public policy, fiscal officers are held to a very strict liability for public funds entrusted to their care. They have been held liable for losses resulting from fire, theft, robbery, burglary, failure of banks in which money was deposited, and, in fact, losses sustained by almost every cause except the act of God or a public enemy.

5. COUNTIES—*Board of Supervisors—Allowance and Payment of Claims—Treasurer.*—The statutes of this State give in detail the method by which boards of supervisors may allow and pay claims within their jurisdiction. No provision is made for paying such claims except by a warrant on the treasurer, and section 851 Code 1904 provides that "every warrant shall be signed by the clerk and countersigned by the acting chairman of the board, and the name of the person to whom it is issued shall be entered in a book to be kept by him in his office for the purpose; but no warrant shall be issued except upon a recorded vote or resolution of the board." A warrant, therefore, to be legal must be made in conformity with this section. The idea of a "legal warrant" runs through the chapter on the subject of county treasurers, and the word "legal" in this connection is the equivalent of "lawful."

78

6. AGENCY—*Chairman of Board of Supervisors—Liability of Board for Acts of Chairman.*—In the instant case, it was insisted by counsel for the county treasurer that where one of two innocent persons must suffer a loss resulting from the negligence, fraud or deceit of a third person, or of his agent, he should suffer the loss who reposed confidence in such person and not the other party. But that doctrine has no bearing upon the question in controversy, as the chairman of the board was in no sense the agent of the board, but a public officer charged with certain duties, for the discharge of which he alone was responsible.

7. COUNTIES—*Treasurer—Treasurer Not A Mere Disbursing Officer.*—A county treasurer has no supervisory power over the board to determine the validity of accounts allowed by the board, and he cannot refuse to pay claims for which warrants have been legally issued, simply because he thinks they are not just or lawful, nor for any other reason which has been passed upon by the board where it had power to act. If the matter is within the jurisdiction of the board, and the board has acted upon the claim and issued a legal warrant therefor, it is plainly the duty of the treasurer to pay it. But where the claims had not been passed upon by the board and no legal warrants therefor had been issued, the treasurer is liable if he pays illegal and unauthorized warrants.

8. PUBLIC OFFICERS—*Presumptions and Burden of Proof.*—There is a difference between indulging a presumption in favor of an officer having done a duty which the law cast upon him, and indulging a presumption that a fact exists which the statute requires to exist in order to give the officer power to act.

9. TREASURER—*Liability—Compliance With Statute—Case at Bar.*—An officer disbursing the public revenue must comply substantially with every provision of the statute enacted for its protection, and if he fails to do so, and loss ensues in consequence thereof, he must bear it. In the instant case the right of the chairman of the board to sign warrants for claims which had to be audited by the board was dependent upon the allowance of the claims by the board. The previous action of the board was, in a sense, jurisdictional. Without it, the warrant was a nullity into whosoever hands it passed, and created no liability upon the county. The treasurer had no right to presume that the claims had been audited by the board of supervisors and a recorded vote taken allowing the claim, and that in pursuance thereof the chairman and clerk had issued the warrants in controversy. The chairman of the board and the clerk had no right or power to issue the warrants until the claims had been passed upon by the board. The clerk was required to keep a list of all the warrants and the treasurer was required

to attend all regular meetings of the board. He had but to consult the clerk's list to ascertain whether or not warrants had been authorized. It was his failure to do this that occasioned the loss in controversy, and the county cannot be called upon to bear a loss which the treasurer could so easily have prevented.

Error to a judgment of the Circuit Court of Prince William county, confirming the report of a commissioner of accounts on the accounts of a county treasurer. From this judgment the treasurer appeals.

*Affirmed.*

The opinion states the case.

*C. E. Nicol* and *Allen L. Oliver,* for the plaintiff in error.

*H. Thornton Davies,* for the defendants in error.

BURKS, J., delivered the opinion of the court.

[1] The commissioner of accounts of Prince William county audited the accounts of the treasurer of said county, pursuant to Acts, 1914, p. 640, ch. 330, and filed his report October 4, 1915. The report was excepted to by the board of supervisors of the county, and the circuit court of the county recommitted it to the commissioner with directions to restate it in conformity with oral instructions given the commissioner in open court. The commissioner accordingly restated the account in accordance with his instructions, and filed his report July 26, 1916. To this report the treasurer filed several exceptions. The chief question involved was whether the treasurer should have credit for sundry warrants paid by him for which the board of supervisors denied the liability of the county. Before passing upon the exceptions, the court summoned a jury and had tried at its bar the following issue: "Whether or not the items represent a legal and valid claim against the county so as to justify the treasurer in being entitled to credit therefor, which items are as follows:

"County Fund, the sum of ........ $617.91
Special Road Fund .............. 140.19
Occoquan District .............. 100.19
Brentsville District Road Fund.... 35.49
                                  _____
    Total ......................... $893.78"

The commissioner refused to allow the treasurer credit for these items. The jury, by their verdict, also refused to allow credit for these items, and thereupon the exceptions of the treasurer to the report of the commsisioner were overruled, and a judgment for costs was entered against the treasurer. From this order of the circuit court, which also refused to set aside the verdict of the jury as contrary to the law and the evidence, this appeal was taken.

[2]    The appellee moves to dismiss the appeal as improvidently awarded, on the ground that no appeal lies to this court from an order of an inferior court merely overruling exceptions to and confirming a commissioner's report, and he cites in support of his motion *Owen* v. *Owen,* 109 Va. 432, 63 S. E. 990. That case arose upon the settlement of an administration account under section 2699 of the Code, providing that "the report, to the extent to which it may be confirmed, shall be taken as correct, except so far as the same may, in a suit, in proper time, be surcharged and falsified." There the party appealing had the right to file a bill surcharging and falsifying the account. The case in judgment arises under an entirely different statute, where no right to file such a bill is given the treasurer. The judgment of the circuit court is, in effect, a judgment against the treasurer for upwards of $900, and is a final judgment. Under the provisions of section 3454 of the Code, he has the right of appeal to this court, and the motion to dismiss should, therefore, be overruled.

[3]    It is stated in the record that, on the calling of this

case for hearing on the exceptions to the commissioner's report, "the defendant demanded a trial by jury," and the court directed a jury to be summoned "to try the issue in this cause." The jury was summoned, and they heard and decided the issue hereinbefore set forth, finding a verdict adverse to the defendant. The issue, as framed, presented a question of law which should have been decided by the court, and not submitted to a jury. Moreover, there was no authority for summoning a jury on the hearing of the exceptions to the report of the commissioner. No such authority is conferred by the act under consideration, nor is it to be inferred by analogy to the proceedings under section 2698 of the Code (1904). Not only does that section not apply to *ex parte* settlements by treasurers, but the power to empanel a jury to inquire into matters of fact under section 2698 of the Code of 1887, which had been in force since the Code of 1849, was taken away by Acts 1904, p. 268 (Code 1904, section 2698). It was error, therefore, to have summoned the jury, but the error was harmless, as the court itself properly passed upon the exception to the commissioner's report, and it is the correctness of the court's ruling on the exception which is the matter in controversy here.

The controversy in this case is over the refusal of the board of supervisors to allow the treasurer of Prince William county credit for certain warrants paid by him and upon which the board denied liability. The appellant does not state in his petition the origin of said warrants, nor is the record full and clear on the subject, but the brief for the appellee gives a statement of the facts relating to this matter which was not controverted by the appellant in the oral argument, but in fact accepted and made the basis of his argument here, and which is no doubt correct. That statement is as follows: "Blank county warrants, in book form similar to check books, were filed in the clerk's office of

Prince William county. Without authority from the board of supervisors, or from any other source, the chairman of the said board signed his name to a number of said blank warrants, as chairman, and not at or during any meeting of said board, but when said board was not in session. The clerk or deputy clerk thereafter, likewise without authority from said board or any source, and not at or during any session of said board, signed the clerk's name to said warrants. In a number of said warrants so signed was inserted, in the blank spaces left, the date, payee's name, such amount as he desired, and the fund on which drawn. This was done without authority from or knowledge of said board. On a number of these warrants the payee's indorsement was genuine, but a number contained the forged indorsement of the payee. These warrants were made payable to persons who had no claims against said board, and in whose favor no warrants had been ordered issued.

"When the report which was reviewed by the circuit court was made, the commissioner allowed him credit for all of the said forged warrants, except those upon which the payee's name was forged. He denied him credit for those and those only which bore the forged indorsement of the payee. To this report the treasurer filed exceptions.

"The court held that said treasurer was not entitled to credit for the said warrants upon which the payee's name had been forged, sustaining the report of the commissioner."

[4] For reasons of public policy, fiscal officers are held to a very strict liability for public funds entrusted to their care. They have been held liable for losses resulting from fire, theft, robbery, burglary, failure of banks in which money was deposited, and, in fact, losses sustained by almost every cause except the act of God or a public enemy. See cases collected in notes 22 R. C. L., sec. 140, p. 470. In *Mecklenburg* v. *Beales,* 111 Va. 691, 69 S. E. 1032, 36 L. R. A. (N. S.) 285, it was said that the court favored the rule

of strict liability which required a public official to assume all risk of loss, and imposes upon him the duty to account for the public funds which go into his hands.

[5]   The statutes of this State give in detail the method by which boards of supervisors may allow and pay claims within their jurisdiction.  No provision is made for paying such claims except by a warrant on the treasurer, and Code 1904, section 851, provides that "every warrant shall be signed by the clerk and countersigned by the acting chairman of the board, and the name of the person to whom it is issued shall be entered in a book to be kept by him in his office for the purpose; but no warrant shall be issued except upon a recorded vote or resolution of the board."   A warrant, therefore, to be legal, must be made in conformity with this section.   This idea of a "legal warrant" runs through the chapter on the subject of county treasurers. Section 859 speaks of "warrants legally drawn upon him by the board."   Section 860 of a "warrant legally drawn upon him," and section 863 of a "legal warrant."   The word "legal" in this connection is the equivalent of "lawful."   It is said in Black's Law Dictionary under the word "lawful," "But there are some connections in which the two words are used as exact equivalents.  Thus a 'lawful' right, warrant or process is the same as a 'legal' right, warrant or process."

It is not claimed by counsel for the appellant that the warrants in this case were legal warrants, but only that they were apparently legal, and because of the apparent legality the county should pay them.

[6]   It was insisted by counsel for the appellant that where one of two innocent persons must suffer a loss resulting from the negligence, fraud or deceit of a third person, or of his agent, he should suffer the loss who reposed confidence in such person and not the other party, and a number of cases are cited to support the proposition.  But that doctrine has no bearing upon the question in contro-

versy. The chairmen of the board was in no sense the agent of the board, and the doctrine of agency does not apply. He was not held out by the board as a person upon whose acts or statements the treasurer could rely. He was a public officer charged with certain duties, for the discharge of which he alone was responsible. The statute imposed upon the chairman, and not upon the board of supervisors, the duty of countersigning the warrants, and nothing that the board did, or omitted to do, could, in any proper sense, be said to have affected his conduct in signing the warrants. He acted as a public officer under the mandate of the law, and all persons were charged with knowledge of his powers and duties. These were prescribed by the statute, and not by any resolution of the board of supervisors. But even if the relation of principal and agent had existed between the board of supervisors and the chairman, the latter was not acting for the benefit of the former in signing warrants for which no claims had been allowed, and there is very high authority for the statement that in such case the principal is not liable. *British Mutual Banking Co.* v. *Charwood Forest Ry.*, L. R. 18 Q. B. 714, 716-7; *Friedlander* v. *Texas, etc., Ry.*, 130 U. S. 416, 9 Sup. Ct. 570, 32 L. Ed. 991. It must be conceded, however, that the doctrine of these cases is seriously controverted. *New York & N. H. R. Co.* v. *Schuyler*, 34 N. Y. 30; *Allen* v. *South Boston R. Co.*, 150 Mass. 200, 22 N. E. 917, 5 L. R. A. 716, 15 Am. St. Rep. 185; *Amer. Wire & Nail Co.* v. *Bayless*, 91 Ky. 94, 15 S. W. 10; *Appeal of Kisterbock*, 127 Pa. 601, 18 Atl. 381, 14 Am. St. Rep. 868.

[7] Quite a number of cases have also been cited to sustain the proposition that the treasurer is a mere disbursing officer, and has no right or power to question the action of the board of supervisors, or to go behind it, but is bound to pay warrants drawn upon him by the board. Undoubtedly the treasurer has no supervisory power over

the board to determine the validity of accounts allowed by the board.  He cannot refuse to pay claims for which warrants have been legally issued, simply because he thinks they are not just or lawful, nor for any other reason which has been passed upon by the board where it had power to act.  If the matter is within the jurisdiction of the board, and the board has acted upon the claim and issued a legal warrant therefor, it is plainly the duty of the treasurer to pay it.  It will be unnecessary to examine these cases, as the legal proposition involved is not in controversy, but only its application.  In the case in judgment, the claims had not been pased upon by the board and no legal warrants therefor had been issued, so that no such question is involved as that determined by the cases referred to.

[8]    It is earnestly insisted that a ministerial officer will be protected in the service of process which is fair on its face, and emanates from proper authority.  A number of cases from the United States Supreme Court are relied on to support the doctrine.  The rule in that class of cases is well stated by Mr. Justice Field in *Erskine* v. *Hohnbach,* 14 Wall. 613, 616 (20 L. Ed. 745), where he says that it is well settled "that if the officer or tribunal possess jurisdiction over the subject matter upon which judgment is passed, with power to issue an order or process for the enforcement of such judgment, and the order or process issued thereon to the ministerial officer is regular on its face, showing no departure from the law, or defect of jurisdiction over the person or property affected, then and in such cases, the order or process will give full and entire protection to the ministerial officer in its regular enforcement against any prosecution which the party aggrieved thereby may institute against him, although serious errors may have been committed by the officer or tribunal by reaching the conclusion or judgment upon which the order or process issued."  It was this principle only which was enforced in *Bryan* v.

*Ker,* 222 U. S. 107, 32 Sup. Ct. 26, 56 L. Ed. 114, so earnestly relied on by the appellant. But the case in judgment is not a case of the service of process, or the execution by a ministerial officer of a process emanating from a tribunal having jurisdiction over the subject matter, and it is not controlled by the same principles. The cases referred to on this subject belong to the class where the acts of the officer executing the process presuppose the validity of another act by the tribunal from which the process emanated, but as held in *Langford* v. *Few,* 146 Mo. 142, 47 S. W. 927, 69 Am. St. Rep. 608, there is a difference between indulging a presumption in favor of an officer having done a duty which the law cast upon him, and indulging a presumption that a fact exists which the statute requires to exist in order to give the officer power to act. See also, *Reed* v. *Lowe,* 163 Mo. 519, 63 S. W. 687, 85 Am. St. Rep. 578.

[9]    In *French* v. *Edwards,* 13 Wall 506, 511 (20 L. Ed. 702), it was held that where the provisions of a statute are intended for the protection of a citizen, "and to prevent a sacrifice of his property, and by a disregard of which his rights might be, and generally would be, injuriously affected, they are not directory but mandatory. They must be followed or the acts done will be invalid." If this be true of statutes affecting private rights, it must, of necessity, be true of statutes affecting the public revenue around which every safeguard is thrown for its protection. An officer disbursing the public revenue must comply substantially with every provision of the statute enacted for its protection, and if he fails to do so, and loss ensues in consequence thereof, he must bear it. The right of the chairman of the board to sign warrants for claims which had to be audited by the board was dependent upon the allowance of the claim by the board. The previous action of the board was, in a sense, jurisdictional. Without it, the warrant was a nullity into whosoever hands it passed, and cre--

ated no liability upon the county. The treasurer had no right to presume that the claims had been audited by the board of supervisors and a recorded vote taken allowing the claim, and that in pursuance thereof the chairman and clerk had issued the warrants in controversy. The chairman of the board and the clerk had no right or power to issue the warrants until the claims had been passed upon by the board. It is very rare that warrants are ever issued except after compliance with section 851 of the Code, and there was comparatively little risk in the treasurer paying warrants bearing the signature of the chairman of the board and the clerk, but this risk, whether large or small, was the risk of the treasurer and not of the board of supervisors, and the loss which ensued therefrom must fall upon the treasurer. The clerk was required to keep a list of all the warrants and the treasurer was required to attend all regular meetings of the board. He had but to consult the clerk's list to ascertain whether or not warrants had been authorized. It was his failure to do this that occasioned the loss in controversy, and, while it is conceded that the treasurer was guilty of no fraud in the transaction, but acted in the utmost good faith, yet the loss is the result of a failure on his part to exercise proper care for his own protection. He had the means readily at his command to have protected himself against loss, but failed to use them, and he cannot now call upon the county to bear a loss which he could so easily have prevented.

We have not deemed it necessary to consider what was the effect of forging the endorsements of the payee on said warrants, as the illegality of the warrants themselves is an insuperable obstacle to their payment. Other questions were raised in the case, but they were only incidental to the main question hereinbefore considered, and need not be noticed.

For the reasons hereinbefore stated, the judgment of the circuit court must be affirmed.

*Affirmed.*