## CIRCUIT COURT OF THE CITY OF RICHMOND

Island Grill, Ltd., et al.

v.

Board of Zoning Appeals

September 30, 1994

Case No. HE-703-4

BY JUDGE RANDALL G. JOHNSON

This is an appeal from a decision of the Board of Zoning Appeals of the City of Richmond which affirmed the issuance of a building permit for what is proposed to be an "adult entertainment establishment" — specifically, a "topless bar" — in the Shockoe Bottom area of Richmond. Plaintiffs, who oppose the issuance of the permit, are three owners of businesses located adjacent to or near the site in question. The proposed operator of the topless bar has intervened. At issue is whether an amendment to the city's zoning laws, made after the building permit was applied for but before it was issued, prohibits the planned use of the site.

The facts are not in dispute. The property at issue is located in a B-5 zoning district. In February, 1994, Frazier T. Boyd, III, the intervenor and lessee of the property, began discussions with city officials regarding the use of the property as a topless bar, a use which, at that time, was not prohibited in B-5 districts. Later, it became known that City Council might amend the zoning laws to prohibit adult entertainment establishments in B-5 districts. In consultation with city officials, however, including members of the city's planning staff, Boyd was assured on several occasions that, consistent with the city's long-standing policy and treatment of others, the zoning laws which would apply to his proposed use would be the laws in effect at the time his building permit application was filed, not the laws which might be in effect when the permit was actually issued. Based on those express assurances, Boyd, on March 11, 1994, submitted his

application and all required accompanying materials necessary for the issuance of a building permit.

Upon receipt of Boyd's application, the city's planning and development staff conducted a detailed and thorough review to assure compliance with applicable laws. The city's staff then approved the application for acceptance, confirming thereby that the filing fully complied with all applicable laws and regulations, and specifically finding that the proposed use was permissible under existing law. In fact, some staff members even told Boyd that he possessed a "vested right" to operate his proposed use under the then-existing B-5 zoning laws. Based on those representations, Boyd expended or became obligated for sums in excess of $31,000 in connection with readying the property for use. He also entered into a multi-year lease for the property.

On March 14, 1994, after Boyd's application had been submitted and approved for acceptance by the city, but before a building permit had been issued, City Council amended the zoning laws to remove adult entertainment establishments as a permitted use in B-5 districts. Just prior to the passage of the amendment, the city attorney, in response to a question from Council, stated that the amendment would not affect pending applications, and at least one Council member also commented that the amendment would apply only to future applications. Boyd continued to rely on these and other representations in preparing to operate his establishment.

On March 25, 1994, the city's zoning administrator requested an opinion from the city attorney's office to confirm his own belief that Boyd's application for a building permit should be considered under the old zoning laws. By memorandum dated April 6, 1994, the city attorney's office confirmed the city's long-standing policy of considering an application in proper form, and which would have been approved prior to the time of a change in the law, to be vested at the time it is filed. Thus, Boyd's application, filed three days before the amendment, was said to be vested, and was to be considered under the pre-amendment law. The building permit was issued on April 14, 1994. Plaintiffs then appealed to the Board of Zoning Appeals, which affirmed the issuance of the permit. This appeal followed.

Boyd initially objects to these proceedings on the ground that plaintiff's appeal to the Board was not timely filed. This is so, Boyd says, because while the building permit was not issued until April 14, which was within thirty days of plaintiffs' appeal, the actual decision was made earlier. Such decision, according to Boyd, was contained in the March 25, 1994, memo-

randum from the zoning administrator to the city attorney's office, and again in the city attorney's reply. Since both of those memoranda are dated more than thirty days prior to plaintiffs' appeal to the Board, Boyd argues that such appeal was untimely. The court rejects Boyd's argument.

Va. Code § 15.1-496.1 allows an appeal to the Board within thirty days of "the decision appealed from." The decision appealed from in this case is the issuance of the building permit, not a city official's decision that the permit should be issued. Indeed, if Boyd's argument were accepted, a comment by the administrator to a coworker at lunch that he has already decided to issue a building permit would start the thirty day appeal period, although no one but the administrator and his coworker would know of the decision. Thus, if the permit is not actually issued for another thirty-one days, no one could challenge the issuance since the appeal time has already run.

Similarly, the memoranda from the administrator and the city attorney's office in this case were not public records, and there was no way that any member of the public who wanted to challenge the issuance of the permit could have known about them. Obviously, the appeal time runs from the issuance of the permit, and Boyd's argument in this regard is all but frivolous.

Turning now to the real issue before the court, the question is whether Boyd had, at the time of the amendment to the zoning ordinance, a vested right to operate a topless bar. In addressing this question, it is necessary to review a line of Supreme Court cases beginning with *Board of Supervisors of Fairfax County v. Medical Structures, Inc.*, 213 Va. 355, 192 S.E.2d 799 (1972), and ending with the very recent case of *Snow v. Amherst County Board of Zoning Appeals*, 248 Va. 404 (1994). In fact, in *Holland v. Board of Supervisors*, 247 Va. 286, 441 S.E.2d 20 (1994), the Supreme Court itself spent considerable time reviewing the cases which had been decided up to then, and what follows now is, for the most part, a recitation of the review of those cases as set out in *Holland. See* 247 Va. at 289-91.

In *Board of Supervisors of Fairfax County v. Medical Structures, Inc.*, the county Board of Zoning Appeals issued a special use permit to Medical Structures' predecessor in title. The permit allowed Medical Structures' predecessor to build a nursing home on its property. Medical Structures purchased the property and filed a site plan as a prerequisite to the issuance of a building permit. The county informed Medical Structures that certain zoning amendments, enacted after Medical Structures had acquired the property, prohibited approval of its site plan. The Court stated:

[W]here, as here, a special use permit has been granted under a zoning classification, a bona fide site plan has thereafter been filed and diligently pursued, and substantial expense has been incurred in good faith before a change in zoning, the permittee then has a vested right to the land use described in the use permit and he cannot be deprived of such use by subsequent legislation.

213 Va. at 358.

In *Board of Supervisors of Fairfax County v. Cities Service Oil Co.*, 213 Va. 359, 193 S.E.2d 1 (1972), the county Board of Zoning Appeals issued a special use permit to City Engineering and Development Company, Cities Service's predecessor in title. The permit authorized Cities Service to construct and operate a gasoline station on its property. After issuing the permit, the board changed the zoning classification of the property to a classification which did not permit the construction of the gasoline station. Relying upon its holding in *Medical Structures*, the Court held that Cities Service had a vested right to the land use described in the special use permit.

In *Notestein v. Board of Supervisors of Appomattox County*, 240 Va. 146, 393 S.E.2d 205 (1990), the Court considered whether landowners had acquired vested rights to develop and operate a nonhazardous waste landfill on their property. In February 1988, John and Lois Notestein filed an application with the Virginia Department of Waste Management for a permit to construct and operate a landfill on their property. The Department conducted an on-site evaluation of the proposed location, notified the Notesteins that portions of the property were suitable for a landfill, and advised them to proceed with hydrogeological and geotechnical studies.

The Notesteins had numerous discussions with the county administrator, who advised them that the county had no legal basis upon which to limit the source of waste to be received at the landfill or to prevent the operation of the landfill. Relying upon the county's statements, the Notesteins secured financing for the development of the landfill. Two hundred and fifty acres of the Notesteins' property, which had been valued at approximately $100,000 for agricultural use, was worth $750,000 for use as a landfill.

When the Notesteins began the process of developing the landfill, no zoning ordinance existed that would have prohibited them from developing or operating a landfill on their property. Subsequently, the county adopted a new zoning ordinance that created numerous zoning classifica-

tions. The Notesteins' property was placed in an agricultural classification in which a landfill was not a permitted use.

After the enactment of the zoning ordinance, the Notesteins filed a suit asking the court to declare, among other things, that they had acquired a vested property right to operate a landfill on their property. Affirming the judgment on the trial court, the Supreme Court held that the Notesteins did not have a vested right to operate a landfill on their property because "the Notesteins did not identify a significant official governmental act to support their claim of a vested property right." 240 Va. at 152.

In *Town of Stephens City v. Russell*, 241 Va. 160, 399 S.E.2d 814 (1991), Glen E. Russell executed a sales contract to purchase a tract of land referred to as the Armstead tract in the Town of Stephens City. He intended to construct three apartment buildings consisting of 33 units on his property. Russell planned to subdivide the property into three parcels so that he could initially construct one building, sell it, and use the proceeds to finance the construction of the additional buildings. Subsequently, the town council enacted a zoning amendment which had the effect of reducing the number of apartment units that Russell could build on his site from 33 to 21.

Russell filed a suit seeking a declaration that he had acquired a vested property right to construct apartments on his property in accordance with the zoning ordinance that existed before the amendment was enacted. Rejecting Russell's claim that he had acquired a vested property right to conduct a use permitted under the former zoning ordinance, the Court stated:

> Application of the principles that we articulated in *Medical Structures*, *Cities Service*, and *Notestein* shows that the trial court erred when it held that Russell had acquired a vested right in the zoning classification which existed before the zoning amendment was enacted. Unlike the developers in *Medical Structures* or *Cities Service*, Russell had not obtained any type of governmental permit or approval.

*Id.* at 164.

In *Holland v. Board of Supervisors*, a company called Rockydale wanted to establish a quarry in Franklin County which had no zoning ordinance. The company conducted extensive tests, purchased property and equipment, commenced construction of an entrance road, and removed 3,500 tons of marketable stone for crushing and testing. In fact,

Rockydale spent in excess of $400,000 for equipment, testing, and land in connection with the proposed quarry, although some of the equipment was to be used elsewhere.

In early May, 1988, after Rockydale had taken the actions and spent the money outlined above, it learned that on May 25, 1988, Franklin County's Board of Supervisors intended to enact a zoning ordinance. Also on May 25, 1988, Rockydale filed, for the first time, an application for a permit with the Virginia Department of Mines, Minerals and Energy, and an application for a permit with the Virginia State Air Pollution Control Board. Rockydale also applied to Franklin County for a soil erosion permit. At the time that the county's zoning ordinance became effective, Rockydale had not acquired any permit of any nature from any governmental entity. Furthermore, Rockydale had not begun to operate the quarry. As enacted, the ordinance prohibited Rockydale from operating a quarry on its property. In deciding whether Rockydale had acquired a vested right to operate a quarry, the Court stated:

> We have consistently held that a landowner who seeks to establish a vested property right to a particular land use must identify a significant official governmental act that would permit the landowner to conduct a use on its property that otherwise would not have been allowed.

247 Va. at 289.

Then, after reviewing the cases discussed above, the Court continued:

> In each of the aforementioned cases, the landowner who sought to establish a vested property right to conduct a specific use on his property was required to show that a governmental entity had committed a significant official act: the issuance of a permit authorizing the permittee to engage in a specific use on its property that otherwise would not have been allowed. Here, Rockydale is unable to identify any significant official governmental act to support its claim of a vested property right. As we stated earlier, Rockydale's president admitted that no governmental agency had granted a permit prior to the enactment of the zoning ordinance on May 25, 1988.

*Id.* at 292.

The trial court's finding that Rockydale possessed a vested right was reversed.

Lastly, in *Snow v. Amherst County Board of Zoning Appeals, supra,* James and Mary Snow wanted to buy and develop for residential purposes a 3.76-acre parcel of land in Amherst County. The land was surrounded on three sides by property owned by the county, and which had been developed as a watershed lake. The land was also adjacent to a conservation zone created by a zoning ordinance, which prohibited construction within 200 feet of the zone. That prohibition effectively precluded construction of a house on the Snows' property because of the shape of the lot. Accordingly, before purchasing the property, the Snows applied to the Board of Zoning Appeals for a variance reducing the minimum setback requirement from 200 feet to 120 feet. The variance was granted in 1989.

Thereafter, the Snows purchased the parcel for approximately $5,000, and expended between $4,000 and $5,000 to survey the parcel, remove trees and undergrowth, and construct a gravel road. In November, 1991, the Board of Supervisors amended the county's zoning and subdivision ordinances to include the Snows' parcel in the watershed district. The amendment effectively prohibited construction of a residence anywhere on the parcel. The Snows filed a request for a variance from the 1991 zoning ordinance amendments, but their request was denied, and they appealed.

After again reviewing the cases discussed above, the Supreme Court held that the Snows did not possess a vested property right:

> On each occasion in which we have considered whether a landowner had acquired a vested property right to a particular land use, we have held, among other things, that the property owner must identify a significant official governmental act that would permit the landowner to conduct a use on his property that otherwise would not have been allowed. For example, in *Medical Structures* and *Cities Service*, we held that the landowners had acquired vested rights in their respective land uses because governmental entities had issued special use permits to them, and the landowners had complied with the other legal requirements necessary for the establishment of a vested right.
>
> By contrast, in *Notestein, Town of Stephens City*, and *Holland*, we held that the landowners had not obtained vested property rights because they failed to show that a governmental entity had committed a significant official act, manifested by the issuance of a permit or other approval authorizing the landowner to engage in a specific use that otherwise would not have been allowed.

Contrary to the Snows' assertion, the grant of a variance is not a significant official governmental act within the meaning of our established precedent. The mere reliance on a particular zoning classification, whether created by ordinance or variance, creates no vested right in a property owner. A variance is simply an authorized deviation from zoning requirements because of special characteristics of a particular property. The grant of a variance cannot confer upon a landowner greater rights than could be afforded by the enactment of a zoning ordinance.

*Supra*, at 408.

Applying the holdings in the above cases to the case at bar, only one conclusion is possible; *i.e.*, that Boyd did not possess a vested property right to operate a topless bar when Richmond's zoning law was changed. This is obvious when the test of the above-cited cases is applied.

As stated in *Snow*, a vested property right to a potential land use exists only where the property owner can identify a significant official governmental act that would permit the owner to conduct a use on his or her property that otherwise would *not* have been allowed.[1] Here, Boyd points to only two "acts" which he contends meet this requirement. First, Boyd argues that the acceptance by the city of his building permit application is an official governmental act since such applications are only accepted if they are in proper form and if they will be approved. Second, Boyd contends that the city's long-standing policy of applying the zoning law in effect at the time an application is filed, which policy was repeatedly confirmed by city officials, is governmental action which satisfies the subject test. I disagree with both arguments.

With regard to the city's acceptance of Boyd's application for a building permit, Boyd reads only a part of the test; *i.e.*, the part which refers to the governmental act. The test involves more:

[T]he property owner must identify a significant official governmental act that would permit the landowner to conduct a use on his property *that otherwise would not have been allowed.*

*Supra*, at 408 (emphasis added).

---

[1] Of course, this analysis does not include those cases in which a landowner is actually using the property in a way contrary to an ordinance at the time the ordinance is enacted or amended. Such cases — "grandfather cases" — are governed by different legal principles and are not applicable here. *See Holland, supra,* at 289, n. *.

At the time the city accepted Boyd's application, the operation of topless bars in B-5 districts *was* allowed. The act of accepting the application, then, did not permit Boyd to conduct a use on his property "that otherwise would *not* have been allowed." (Emphasis added.) Accordingly, the city's acceptance of Boyd's application in no way satisfies the plain language of the Supreme Court's test.

Again, a landowner who claims that he or she has a vested right to *continue* a use that was permitted under an existing zoning law does so not under the line of cases discussed in this opinion, but under the vested right theory of "grandfathering." *See supra.* Since Boyd had not begun operating a topless bar when the amendment took effect in this case, he cannot claim to have a "grandfathered" use here.

With regard to the city's long-standing policy of applying the zoning law in effect at the time a building permit application is filed, I reject Boyd's argument for at least three reasons. First, the Supreme Court's test requires a significant official governmental *act*. I simply do not believe that having a long-standing policy is the type of "act" to which the Court was referring. Indeed, *Webster's* defines "act" as "the doing of a thing; something done voluntarily." *Webster's Ninth New Collegiate Dictionary* (1987). The existence of a policy is not an "act."

Second, the test requires a significant *official* governmental act. Richmond's policy, albeit long-standing, was not *official*. Indeed, it should go without saying that a city's laws, in order to be official, must be in writing. Zoning laws are no different.

Moreover, the fact that city representatives told Boyd that his application would be considered under the old law, and that the city attorney and at least one member of City Council also expressed that opinion, is of no moment. Again, laws must be duly enacted by a legislative body and be in writing. Statements of city representatives, even such "official" representatives as those involved here, do not suffice. They are not "official" within the meaning of the Supreme Court's test.

Third, any uncertainty in this regard is completely erased by the case of *Parker v. County of Madison*, 244 Va. 39, 418 S.E.2d 855 (1992). In *Parker*, a husband and wife (the developer) decided to purchase and develop approximately 79 acres of land in Madison County. On June 26, 1989, the developer submitted a preliminary plat to the county administrator. Three days later, the zoning laws were changed. The developer's application, which complied with the old zoning laws but not with the new ones, was approved under the county's "longstanding practice of granting

to an applicant for subdivision approval benefit of the ordinance in effect at time of application." 244 Va. at 41. The trial court affirmed the approval of the application. The Supreme Court reversed:

> Ordinarily, with certain exceptions not pertinent here, proceedings after an amendment to a former law "shall conform, so far as practicable, to the laws in force at the time of such proceedings." [Va.] Code § 1-16. This rule applies to amendments of local ordinances . . . .
>
> And, we reject the contention of the County and the developer that, by approving the application, the legislative body made its intent "crystal clear" to recognize the unwritten "practice" of approving applications in accordance with the law as it existed at the time the application was filed. *Absent express authorization written into the pertinent ordinance, a governing body has no authority to recognize an unwritten practice that is inconsistent with the existing law.*

*Id.* at 41-43 (emphasis added).

Since the proceeding at issue here — the issuance of, not the application for, the building permit — took place *after* the enactment of the zoning law amendment, the proceeding should have conformed to the amended law. Reliance upon long-standing, unwritten policy, no matter how many times Boyd was assured of that policy, and no matter who made those assurances, is irrelevant. It is the written law that controls.

Finally, the court recognizes the harsh result which its ruling probably produces. That result, however, is no more harsh than the results produced in the majority of the cases discussed above. *See especially Snow, supra,* Stephenson, J., dissenting ("I think the result reached by the majority is particularly harsh because it leaves the Snows with land that is virtually worthless."). *Supra,* at 408. Nonetheless, it is the only result permitted by the holdings of the relevant cases.