## Richmond

BOARD OF SUPERVISORS OF FAIRFAX COUNTY, VIRGINIA v. MEDICAL STRUCTURES, INC.

November 27, 1972.

Record No. 7954.

Present, All the Justices.

*Alton G. Hancock,* for appellant.

*John T. Hazel, Jr.* (*Hazel, Beckhorn and Hanes,* on brief), for appellee.

SNEAD, C.J., delivered the opinion of the court.

Medical Structures, Inc. (Medical Structures) filed a Petition for Declaratory Judgment against the Board of Supervisors of Fairfax County alleging that Medical Structures was the owner of a tract of land in Fairfax County and that the County Board of Zoning Appeals had issued a special use permit allowing it to construct a nursing home on the property. It was further alleged that, subsequent to the

issuance of the special use permit and to the filing of a site plan as required by county ordinance, the Board of Supervisors had unlawfully amended the zoning requirements having the effect of prohibiting petitioner's nursing home. This was done, it was alleged, arbitrarily and capriciously in disregard of Medical Structures' vested rights.

After hearing the evidence *ore tenus* the trial court entered a decree on September 2, 1971, in favor of Medical Structures to the effect that under the circumstances of the case Medical Structures obtained a vested right in a special use permit which could not be divested by the subsequent enactment of an amended zoning ordinance. The zoning amendments were held null and void as to Medical Structures, and the court directed the county to approve the site plan and upon the filing of the required application to issue a building permit.

The Board of Supervisors assigned as error (1) the finding of the trial court that the granting of a special use permit created a vested right to a given land use which could not be divested by subsequent legislative action, and (2) the order directing approval of Medical Structures' site plan and the issuance of a building permit in disregard of the amended ordinance.

The evidence establishes that on April 23, 1963, a special use permit was granted to Henry Rolfs, Medical Structures' predecessor in title, permitting a 160-bed nursing home on his property located on Columbia Pike in an R-17 zoning district (residential 17,000 square feet). At that time nursing homes were allowed in all residential districts under special use permits. The use permit on the subject property was extended a number of times and did not finally expire until January 8, 1970.

On December 24, 1968, Medical Structures purchased the property from Rolfs for $250,000, reflecting the value of the use permit, and filed a site plan on March 7, 1969, as a prerequisite to the issuance of a building permit. The site plan was resubmitted to the county with alterations on June 16, August 18, and November 12, 1969, which procedure was not unusual in Fairfax County.

On January 7, 1970, John F. Chilton, chief of the land planning department of Fairfax County, affixed his signature to the site plan approving it and the requisite bonding, siltation and easement agreements. However, after consultation with the county attorney on the same day, Chilton eradicated his signature and notified Medical

Structures on January 8, 1970, that the passage of amendments to the zoning ordinance on October 8 and November 19, 1969, prevented approval of its site plan. Chilton advised Medical Structures by letter that if the ordinance had not been amended, he would have approved the site plan, entitling Medical Structures to the issuance of a building permit before the expiration of the use permit on January 8, 1970.

The actions of the Board of Supervisors on October 8 and November 19 amended the zoning ordinance to prohibit nursing homes of over 50 beds in any residential district of less density than RT-10 (residential townhouses), which prohibition included Medical Structures' R-17 property. The amendments provided, however, a "grandfather clause" for an existing nursing home with future expansion plans for more than 50 beds located 2000 feet from the subject property on Columbia Pike in a district of less density than RT-10 or R-17.

Medical Structures spent considerable sums of money in the development and preparation of site plans and bond deposits. The uncontradicted evidence shows that it spent $59,600 for engineering and architectural plans alone and a total for the entire project of $247,500 exclusive of the purchase price. There was no evidence that the proposed construction would be harmful to the public health, safety, morals or general welfare.

The question whether the issuance of a special use permit and the filing of a site plan create a vested property right in the permittee is one of first impression for this Court.

The Board of Supervisors argues that for rights to vest from reliance upon a special use permit or building permit, one must go beyond mere expense in preparation, and construction must have actually and substantially begun. In support of its position, the Board of Supervisors relies on *McClung* v. *County of Henrico*, 200 Va. 870, 108 S.E.2d 513 (1959).

On the other hand, Medical Structures argues that once a diligently pursued site plan is filed in reliance upon existing zoning or the issuance of a special use permit, fairness dictates that a vested right is acquired in the land use.

In recent years some localities have enacted ordinances requiring the filing of a site plan in order to obtain a building permit. Under current planning practice in many urban localities, the site plan has virtually replaced the building permit as the most vital document in the development process. Every site plan submitted under the Fairfax County Zoning Ordinance (Chapter 30, Code of Fairfax County)

must contain, among other things, topographical maps, surveys, engineering studies and proof of notice to landowners in the vicinity. The filing of such a plan creates a monument to the developer's intention, and when the plan is approved, the building permit, except in rare situations, will be issued.

Here, Medical Structures purchased the property in reliance upon the use permit allowing a 160-bed nursing home. It incurred in good faith expenses amounting to $59,600 in the preparation of site and architectural plans as well as other considerable development costs. Certainly, a substantial change in its position resulted therefrom.

We hold that where, as here, a special use permit has been granted under a zoning classification, a bona fide site plan has thereafter been filed and diligently pursued, and substantial expense has been incurred in good faith before a change in zoning, the permittee then has a vested right to the land use described in the use permit and he cannot be deprived of such use by subsequent legislation.

We further hold that the trial court did not err in ordering the approval of Medical Structures' site plan and the issuance of a building permit.

*McClung* v. *County of Henrico, supra,* relied upon by the Board of Supervisors, is factually different from the case at bar and is not controlling. In that case, after McClung was issued a building permit, the zoning ordinance was amended to prohibit the intended use. Thereafter, his rights were held to have expired for failure to start construction within ninety days after the amendment as provided by the zoning ordinance.

The decree of the trial court will be

*Affirmed.*