## John A. Notestein, et al.

## v.

## The Board of Supervisors of Appomattox County, et al.

Record No. 891258

June 8, 1990

Present: All the Justices

*Brian L. Buniva (Kelly, Lewis & Buniva*, on brief), for appellants.

*Robert T. Billingsley (Charles F. Witthoefft; Peter L. Trible; Gary L. Kessler; Hirschler, Fleischer, Weinberg, Cox & Allen*, on brief), for appellees.

JUSTICE HASSELL delivered the opinion of the court.

This is an appeal from a judgment of the trial court sustaining a demurrer filed by the Board of Supervisors of Appomattox County and Dennis Gragg, the County Administrator, (collectively, the Board) to a bill of complaint filed by John and Lois Notestein. The Notesteins challenged the validity of a zoning ordinance that prohibited them from developing and operating a non-hazardous solid waste landfill in Appomattox County.

The Notesteins alleged the following facts in their bill of complaint, which must be considered true at this stage of the proceedings. The Notesteins own 600 acres of land on State Route 632 in Appomattox County. The County operates a landfill across the road from the Notesteins' property. In February, 1988, the Notesteins filed an application for a permit with the Virginia Department of Waste Management (the Department) to construct and operate a landfill on 300 acres of their property.

The Department notified the County of the Notesteins' application and advised it by letter dated February 17, 1988, that the

County was required to inform the Department whether the proposed site of the landfill was consistent with the County's zoning ordinance. The letter also notified the County that its failure to respond within thirty days would be deemed a waiver of any objection the County might have to the issuance of a permit.

The County notified the Department by letter dated March 14, 1988 of unspecified objections to the issuance of a permit. The County also informed the Department of the County's intention to conduct a public hearing and asked the Department to evaluate the proposed site before the hearing. The Department considered the County's letter and conducted an on-site evaluation of the proposed location. The Department notified the Notesteins that portions of their property were suitable for a landfill and advised them to proceed with the necessary hydrogeological and geotechnical studies.

On April 8, 1988, the Notesteins attended a regularly scheduled meeting of the Board. The meeting's minutes indicated that no ordinance existed that would have prohibited the issuance of a permit to the Notesteins. The Board asked the Appomattox County Commonwealth's Attorney to request that the Department conduct a public hearing on the Notesteins' application. The Department refused to do so.

The County Administrator, who also serves as its zoning administrator, advised the Notesteins that the County had no legal basis upon which to limit the source of waste to be received at the landfill or to prevent the operation of the landfill. The Notesteins, relying in good faith upon statements of the Board and County Administrator, secured financing for the development of the landfill.

During the months of May and June, 1988, the Notesteins received several offers for the purchase of their land. Some of the offers were as high as $3,000 per acre for 250 acres of their property. Previously, the Notesteins had received offers for the purchase of their property for approximately $400 per acre. Thus, 250 acres of the Notesteins' land which had been valued at approximately $100,000 for agricultural use was worth $750,000 for use as a landfill. The Notesteins rejected these offers. The Notesteins executed a written agreement with private investors to secure additional financing.

The Board conducted a public hearing on a proposed amendment to the County's solid waste disposal ordinance. The County Administrator informed the Notesteins that the purpose of the

amendment was to generate tax revenue. The proposed amendment, which was enacted, imposed a license fee upon the operation of landfills located in the County.

In July, 1988, the Notesteins learned from an article in a local newspaper that the Board was considering the adoption of a new zoning ordinance. The Notesteins discussed this proposed action with individual Board members and the County Administrator. The Notesteins were assured that any zoning ordinance which might be enacted would not affect their ability to develop and operate a landfill.

The County planning commission and the Board conducted a public hearing on August 18, 1988. On August 22, 1988, the Board adopted a zoning ordinance which created numerous zoning classifications, including agricultural classifications and an "environmental hazard district" classification. The Notesteins' property was placed in an agricultural classification in which a landfill is not a permitted use. The County's landfill was placed in the environmental hazard classification in which landfills are permitted by special use permit.

After the enactment of the zoning ordinance, the County sent a letter to the director of the Department and informed her of the newly enacted ordinance. The County advised the Department that operation of a landfill on the Notesteins' property was now inconsistent with the County's zoning ordinance, and requested that the Department deny the Notesteins' application.

The Notesteins filed this suit and asked that the court declare the zoning ordinance null and void on the basis that it was enacted in violation of Code § 15.1-493(C); that the County's refusal to place the Notesteins' property within the same zoning classification as the County's landfill was unwarranted, arbitrary, and capricious; that the Notesteins' right to operate a landfill was vested and the County was equitably estopped from prohibiting the Notesteins from developing and operating the landfill; and that the County had waived its right to object to the issuance of the permit. The Notesteins also requested that the court enjoin the County from taking any action which might interfere with either the issuance of the permit or result in enforcement of the zoning ordinance. The County filed a demurrer which was sustained by the court.

The Notesteins argue that the trial court erred when it sustained the County's demurrer on the basis that the Notesteins

failed to allege sufficient facts to support their claims of vested rights and equitable estoppel. The Notesteins alleged the following facts in support of these claims: members of the Board advised them that the permit would be granted if they complied with all applicable state and federal waste regulations; the Board instructed the Appomattox County Commonwealth's Attorney to request that the Department conduct a public hearing on the Notesteins' application; the County Administrator advised the Notesteins that the County had no legal basis to prevent the Notesteins from constructing and operating a landfill; they, in good faith reliance upon the County's statements, executed written agreements with private investors to obtain capital to finance and operate the landfill; they rejected offers of $3,000 per acre for the sale of their land when previously they had received offers of approximately $400 per acre; they retained engineers to assist with geotechnical and hydrogeological studies of their property; and individual members of the Board assured them that they would be allowed to operate a landfill on their property if a new zoning ordinance was enacted.

■ We have discussed the legal requirements which are necessary to create a vested property right in a zoning classification in *Fairfax County* v. *Medical Structures*, 213 Va. 355, 192 S.E.2d 799 (1972), and *Fairfax County* v. *Cities Service*, 213 Va. 359, 193 S.E.2d 1 (1972). In *Medical Structures*, the county board of zoning appeals issued a special use permit to Medical Structures' predecessor in title, allowing it to construct a nursing home on its property. The board of supervisors amended the zoning ordinance after the special use permit had been issued. The amended ordinance did not allow Medical Structures to operate a nursing home. Medical Structures, in good faith reliance upon the special use permit, incurred considerable expenses in the development and preparation of site plans and bond costs. *Medical Structures*, 213 Va. at 356-57, 192 S.E.2d at 800-01. This Court held:

[W]here . . . a special use permit has been granted under a zoning classification, a bona fide site plan has thereinafter been filed and diligently pursued, and substantial expense has been incurred in good faith before a change in zoning, the permittee then has a vested right to the land use described in the use permit and he cannot be deprived of such use by subsequent legislation.

*Id.* at 358, 192 S.E.2d at 801.

In *Cities Service,* the county board of zoning appeals issued a special use permit to City Engineering and Development Company, Cities Service's predecessor in title. The special use permit authorized Cities Service to erect a gasoline station on its property. After the permit had been issued, the board changed the zoning classification of the property to a use which did not permit the erection of a gasoline station. We held that Cities Service had a vested right to develop its property as permitted by the special use permit because of the principles which we articulated in *Medical Structures. Cities Service,* 213 Va. at 362, 193 S.E.2d at 3. *See Medical Structures,* 213 Va. at 358, 192 S.E.2d at 801.

In both cases, a governmental entity had committed a significant official act: the issuance of a permit which allowed the permittee to conduct a "use" on its property which otherwise would not have been allowed. Unlike the landowners in· *Medical Structures* or *Cities Service,* the Notesteins did not identify a significant official governmental act to support their claim of a vested property right. Additionally, the Board cannot be estopped from enacting a zoning ordinance which prohibits the Notesteins from operating a landfill because "[e]stoppel does not apply to the government in the discharge of its governmental functions." *Gwinn* v. *Alward,* 235 Va. 616, 621, 369 S.E.2d 410, 413 (1988)(citations omitted). Accordingly, the trial court did not err when it sustained the County's demurrer to the Notesteins' claims of vested rights and equitable estoppel.

The Notesteins argue that the trial court erred when it sustained the demurrer because their bill of complaint alleged that the Board failed to comply with Code § 15.1-493(C), which states:

> Before approving and adopting any zoning ordinance or amendment thereof, the governing body shall hold at least one public hearing thereon, pursuant to public notice as required by § 15.1-431, after which the governing body may make appropriate changes or corrections in the ordinance or proposed amendment. *However, no land may be zoned to a more intensive use classification than was contained in the public notice without an additional public hearing after notice required by § 15.1-431.* Such ordinances shall be enacted in the same manner as all other ordinances.

(Emphasis added.) The Notesteins alleged that the County violated Code § 15.1-493(C) because its landfill was placed in a more intensive use classification than was contained in the public notice of the August 18, 1988 hearing.

The Board contends that the zoning ordinance permits a variety of uses within agricultural classifications whereas "no uses are permitted by right" in the environmental hazard district. Thus, the Board argues that, by definition, the environmental hazard district is the most restrictive and least intensive classification within the County.

Code § 15.1-493(C) does not require that the governing body conduct a second public hearing when property is placed in a less intensive use zoning classification than was contained in the notice of the public hearing. "This is because as a practical matter any citizen interested in preventing the less intensive use would or should be present to be heard at the hearing on the request for the more intensive use." *Fairfax County v. Pyles*, 224 Va. 629, 637, 300 S.E.2d 79, 83 (1983).

The Notesteins alleged in their bill of complaint that the County's landfill was placed in a more intensive classification than was contained in the notice of public hearing. We are unable to discern from the bill of complaint whether the County's zoning ordinance placed its landfill in a more or less intensive use classification. If the Notesteins are able to prove that the Board was required to comply with the mandatory notice requirements specified in Code § 15.1-493 and failed to do so, then the zoning ordinance would be invalid. *See Town of Vinton v. Falcun Corp.*, 226 Va. 62, 306 S.E.2d 867 (1983).

The Notesteins also argue that the trial court erred because it granted the demurrer on the basis that they failed to exhaust administrative remedies. We agree. The Notesteins alleged that the zoning ordinance is invalid because it was adopted in violation of Code § 15.1-493(C). If the Notesteins are correct, they are not required to pursue administrative remedies created by an invalid ordinance. Under these circumstances, the landowners have "standing to proceed directly to court to seek redress of this unlawful act." *Rinker v. City of Fairfax*, 238 Va. 24, 29, 381 S.E.2d 215, 218 (1989).

The Notesteins next argue that the County waived its objections to the issuance of their application for a permit because the County failed to notify the Department as required by Code

§ 10.1-1408.1(B).[1] Former Code § 10-271(A) (which was repealed and the substance of which was later incorporated in Code § 10.1-1408.1) required that the director of the Department notify the locality in which a proposed landfill was to be located, upon receipt of an application for a permit to operate a landfill. A county was then required to certify to the Department that the site of the proposed landfill was consistent with its zoning ordinances. A county's failure to provide such certification within thirty days was deemed a waiver of any objections that it might have had to the issuance of a permit on the basis of a conflict with local ordinances.

■ The trial court properly sustained the demurrer to the Notesteins' allegations that the County waived its right to object as provided in former Code § 10-271(A). The County did not have a zoning ordinance on the date the Department notified it of the Notesteins' application. The County cannot be deemed to have waived its right to object to the issuance of a permit because no zoning ordinance existed at the time of the required certification.

The judgment of the trial court will be affirmed to the extent that it dismissed the Notesteins' claims of vested rights, estoppel, and waiver.[2] The Notesteins will be allowed to prosecute their claims that the County's refusal to place their property within the same zoning classification as the County's landfill was unwarranted, arbitrary and capricious, and that the ordinance was enacted in violation of Code § 15.1-493(C).

Accordingly, the judgment of the trial court is

*Affirmed in part,*
*reversed in part,*
*and remanded.*

---

[1] At the time of this controversy, Code § 10.1-1408.1(B) (1988 Cum. Supp.) stated in part: "failure of the county . . . to provide notification within the thirty day period shall constitute a waiver of the governing body's objections to the issuance of a permit which are based on conflict with a local ordinance."

[2] The Notesteins argued that the trial court abused its discretion because the final order, which sustained the County's demurrer, dismissed the bill of complaint with prejudice and did not grant the Notesteins' leave to amend. We do not decide this issue because we will remand this suit for further proceedings.