SHERRARD HOLLAND, ET AL.

v.

BOARD OF SUPERVISORS OF FRANKLIN COUNTY, ET AL.

Record No. 930428

February 25, 1994

Present: All the Justices

*Edward A. Natt (Osterhoudt, Ferguson, Natt, Aheron & Agee,* on briefs), for appellants.

*Martin R. Willis (David A. Melesco; Greer & Melesco,* on brief), for appellee Rockydale Quarries Corporation.

No brief or argument for appellee Board of Supervisors of Franklin County.

JUSTICE HASSELL delivered the opinion of the Court.

In this appeal, we consider whether a landowner acquired a vested right to operate a quarry on its property.

In May 1978, Gordon C. Willis, Jr., president of Rockydale Quarries Corporation, and James Puckett, Rockydale's vice-president for production, toured Jack's Mountain, located in Franklin County. Rockydale's officers were considering acquiring a site on Jack's Mountain to operate a quarry. In August 1978, Willis had several discussions with certain persons who owned land on Jack's Mountain to ascertain if they were interested in selling their properties. In 1981, Willis learned that 271 acres of land owned by H. Ronald Shelton and William G. Davis, referred to as the Shelton-Davis tract on Jack's Mountain, might be available for sale and that the land might be an ideal quarry site.

In 1985, Daniel H. Phlegar, Rockydale's engineer, conducted a market study and made a determination regarding the feasibility of a

quarry operation on Jack's Mountain. In July 1985, Rockydale began to test large quantities of stone removed from Jack's Mountain.

Rockydale purchased approximately $250,000 worth of equipment in January 1986 from another quarry operator. Rockydale intended to use some of this equipment at the proposed Jack's Mountain quarry. Even though Rockydale's effort to acquire the Shelton-Davis tract had not been successful, Rockydale acquired 8.66 acres adjacent to the Shelton-Davis tract. Rockydale had petrographic tests conducted on thin sections of rock removed from Jack's Mountain to determine the presence of asbestos.

In the summer of 1986, Rockydale acquired an option to purchase the Shelton-Davis tract. Phlegar drew certain designs and configurations of the proposed quarry. He drafted a budget and expenditure schedule for the construction and operation of the quarry. Phlegar advised the State Air Pollution Control Board and the Department of Mines, Minerals and Energy that Rockydale intended to apply for the necessary permits to operate a quarry in Franklin County.

Rockydale also commenced construction of an entrance road and removed 3,500 tons of marketable stone for crushing and testing. The total price of testing and site preparation for the plant and quarry was approximately $39,000.

In February 1987, Rockydale had received the various test results, and its board of directors made a decision to develop the quarry at a site on Jack's Mountain. In July 1987, Rockydale exercised its option and purchased the Shelton-Davis tract for $160,000.

During the period covering June 1987 through May 1988, Rockydale undertook little activity related to the development of the quarry. In early May 1988, Rockydale learned that the Board of Supervisors of Franklin County intended to enact a zoning ordinance on May 25, 1988. The ordinance, as enacted, prohibits Rockydale from operating a quarry on its property without a special use permit. Prior to May 25, 1988, Franklin County had no zoning ordinance.

On May 25, 1988, Rockydale filed, for the first time, an application for a permit with the Virginia Department of Mines, Minerals and Energy and an application for a permit with the Virginia State Air Pollution Control Board. Rockydale also applied to Franklin County for a soil erosion permit. At the time that the County's zoning ordinance became effective, Rockydale had not acquired any permit of any nature from any governmental entity. Furthermore, Rockydale had not begun to operate the quarry.

Rockydale filed its amended motion for declaratory judgment, seeking a declaration that it had acquired a vested right to operate a quarry on its property in Franklin County before the effective date of

the County's new zoning ordinance. The Board of Supervisors filed an answer stating that the Board took no position on whether Rockydale had acquired a vested right to operate a rock quarry. Sherrard Holland, Al Angle, and Michael Grimm, owners of real property in close proximity to the site of the planned quarry, filed a petition to intervene in this action and were granted leave to do so. The intervenors filed responsive pleadings alleging that Rockydale had not acquired a vested right to operate the proposed quarry.

The trial court conducted an *ore tenus* hearing and considered memoranda of law and argument of counsel. By letter opinion, the trial court concluded that Rockydale had acquired a vested right to operate a quarry on its property. We awarded the intervenors an appeal.

The intervenors contend that prior decisions of this Court require that a governmental entity commit a significant official act upon which the landowner must rely before the landowner can obtain a vested property right in a particular land use. The intervenors argue that, as a matter of law, Rockydale has not acquired a vested right to operate the quarry because Rockydale admits that as of the effective date of the County's zoning ordinance, Rockydale had not secured any permits or approvals of any nature from any governmental agency. Rockydale argues, however, that a significant official governmental act is not a necessary element for the establishment of a vested right to operate the quarry. We disagree with Rockydale.

We have consistently held that a landowner who seeks to establish a vested property right to a particular land use must identify a significant official governmental act that would permit the landowner to conduct a use on its property that otherwise would not have been allowed.* In *Board of Supervisors of Fairfax County* v. *Medical Structures, Inc.,* 213 Va. 355, 192 S.E.2d 799 (1972), the County Board of Zoning Appeals issued a special use permit to Medical Structures' predecessor in title. The permit allowed Medical Structures' predecessor to build a nursing home on its property. *Id.* at 356, 192 S.E.2d at 800. Medical Structures purchased the property and filed a site plan as a prerequisite to the issuance of a building permit. *Id.* The County informed Medical Structures that certain zoning amendments, enacted after Medical Structures had acquired

---

* A landowner may also acquire a vested property right to conduct a nonconforming use on its property if that use was in existence on the effective date of the zoning ordinance. *See* Code § 15.1-492; *Knowlton* v. *Browning-Ferris,* 220 Va. 571, 575-76, 260 S.E.2d 232, 236 (1979). Rockydale, however, is not entitled to operate a quarry as a nonconforming use because its quarry was not operational on the effective date of the County's zoning ordinance.

the property, prohibited approval of its site plan. *Id.* at 356-57, 192 S.E.2d at 800-01. We stated:

[W]here, as here, a special use permit has been granted under a zoning classification, a bona fide site plan has thereafter been filed and diligently pursued, and substantial expense has been incurred in good faith before a change in zoning, the permittee then has a vested right to the land use described in the use permit and he cannot be deprived of such use by subsequent legislation.

213 Va. at 358, 192 S.E.2d at 801.

In *Board of Supervisors of Fairfax County v. Cities Service Oil Co.,* 213 Va. 359, 193 S.E.2d 1 (1972), the County Board of Zoning Appeals issued a special use permit to City Engineering and Development Company, Cities Service's predecessor in title. This permit authorized Cities Service to construct and operate a gasoline station on its property. *Id.* at 360, 193 S.E.2d at 2. After issuing the permit, the Board changed the zoning classification of the property to a classification which did not permit the construction of the gasoline station. *Id.* at 361, 193 S.E.2d at 2. Relying upon our holding in *Medical Structures,* we held that Cities Service had a vested right to the land use described in the special use permit. 213 Va. at 362, 193 S.E.2d at 3.

In *Notestein v. Board of Supervisors of Appomattox County,* 240 Va. 146, 393 S.E.2d 205 (1990), we considered whether landowners had acquired vested rights to develop and operate a non-hazardous waste landfill on their property. In February 1988, John and Lois Notestein filed an application with the Virginia Department of Waste Management for a permit to construct and operate a landfill on their property. *Id.* at 148, 393 S.E.2d at 206. The Department conducted an on-site evaluation of the proposed location, notified the Notesteins that portions of the property were suitable for a landfill, and advised them to proceed with hydrogeological and geotechnical studies. *Id.* at 149, 393 S.E.2d at 206.

The Notesteins had numerous discussions with the county administrator, who advised them that the County had no legal basis upon which to limit the source of waste to be received at the landfill or to prevent the operation of the landfill. *Id.* Relying upon the County's statements, the Notesteins secured financing for the development of the landfill. *Id.* Two hundred and fifty acres of the Notesteins' property, which had been valued at approximately $100,000 for agricultural use, was worth $750,000 for use as a landfill. *Id.*

When the Notesteins began the process of developing the landfill, no zoning ordinance existed that would have prohibited them from developing or operating a landfill on their property. *Id.* at 150, 393 S.E.2d at 207. Subsequently, the County adopted a new zoning ordinance that created numerous zoning classifications. The Notesteins' property was placed in an agricultural classification in which a landfill is not a permitted use. *Id.*

After the enactment of the zoning ordinance, the Notesteins filed a suit asking the court to declare, among other things, that they had acquired a vested property right to operate a landfill on their property. *Id.* Affirming the judgment of the trial court, we held that the Notesteins did not have a vested right to operate a landfill on their property because "the Notesteins did not identify a significant official governmental act to support their claim of a vested property right." 240 Va. at 152, 393 S.E.2d at 208.

In *Town of Stephens City v. Russell,* 241 Va. 160, 399 S.E.2d 814 (1991), we considered whether a developer acquired a vested right in a zoning classification. Glen E. Russell executed a sales contract to purchase a tract of land referred to as the Armstead tract in the Town of Stephens City. *Id.* at 161, 399 S.E.2d at 814. He intended to construct three apartment buildings consisting of 33 units on his property. *Id.* Russell planned to subdivide the property into three parcels so that he could initially construct one building, sell it, and use the proceeds to finance the construction of the additional buildings. *Id.* Subsequently, the town council enacted a zoning amendment, which had the effect of reducing the number of apartment units that Russell could build on his site from 33 to 21. *Id.* at 162, 399 S.E.2d at 815.

Russell filed a suit seeking a declaration that he had acquired a vested property right to construct apartments on his property in accordance with the zoning ordinance that existed before the amendment was enacted. *Id.* Rejecting Russell's claim that he had acquired a vested property right to conduct a use permitted under the former zoning ordinance, we stated:

> Application of the principles that we articulated in *Medical Structures, Cities Service,* and *Notestein* shows that the trial court erred when it held that Russell had acquired a vested right in the zoning classification which existed before the zoning amendment was enacted. Unlike the developers in *Medical Structures* or *Cities Service, Russell* had not obtained any type of governmental permit or approval.

*Id.* at 164, 399 S.E.2d at 816.

█ In each of the aforementioned cases, the landowner who sought to establish a vested property right to conduct a specific use on his property was required to show that a governmental entity had committed a significant official act: the issuance of a permit authorizing the permittee to engage in a specific use on its property that otherwise would not have been allowed. Here, Rockydale is unable to identify any significant official governmental act to support its claim of a vested property right. As we stated earlier, Rockydale's president admitted that no governmental agency had granted a permit prior to the enactment of the zoning ordinance on May 25, 1988.

█ Rockydale asserts that it acquired a vested right to operate the quarry when it applied for permits with the Department of Mines, Minerals and Energy and the Virginia Air Pollution Control Board. Rockydale states that the issuance of these permits is merely perfunctory and, therefore, the fact that the permits had not been issued ought not affect whether Rockydale acquired a vested property right to operate the quarry. Our review of the record, however, reveals that Rockydale's application for a permit from the Department of Mines, Minerals and Energy was returned because certain physical inspections by the Department were necessary. This permit was not granted until the locations of certain sediment ponds were changed, and the methods of construction were changed. Furthermore, Rockydale could not lawfully operate a quarry without these permits. Code §§ 45.1-181, 10.1-1322. More importantly, the requirement of a significant official governmental act creates a bright line test that enables landowners to know precisely when they have acquired a vested right in a land use.

█ Rockydale, relying upon *Lucas* v. *South Carolina Coastal Council,* ___ U.S. ___,· 112 S.Ct. 2886 (1992), argues that "the property right that Rockydale claims is constitutionally protected is the fundamental right to exploit the natural resources of the land it owns." Rockydale did not assert any constitutional claims in its amended motion for declaratory judgment. The gravamen of Rockydale's allegations in its amended motion for declaratory judgment is that Rockydale had established a vested right to operate a quarry at Jack's Mountain. Rockydale did not assert this constitutional challenge in support of its claim for vested rights in the trial court. Therefore, we will not permit Rockydale to raise this issue for the first time on appeal.

We hold that Rockydale did not acquire a vested right to operate a quarry at Jack's Mountain. Accordingly, we will reverse the judgment of the trial court and dismiss the proceeding.

*Reversed and dismissed.*