Present: Carrico, C.J., Compton, Hassell, Keenan, Koontz, and Kinser, JJ., and Whiting, Senior Justice

BOARD OF ZONING APPEALS
OF BLAND COUNTY

v.   Record No. 972060

OPINION BY
SENIOR JUSTICE HENRY H. WHITING
June 5, 1998

CASELIN SYSTEMS, INC.

FROM THE CIRCUIT COURT OF BLAND COUNTY
J. Colin Campbell, Judge

The issue here is whether a landowner acquired a vested property right to build and operate its planned medical waste incinerator before the enactment of a county zoning ordinance precluding such use.

Michael L. Perkins, the predecessor in interest to CaseLin Systems, Inc. (CaseLin) and later its president, proposed to locate a medical waste incinerator in Bland County. In an April 1990 public meeting of the Board of Supervisors of Bland County (the Board), representatives of the incinerator manufacturer and state and regional air pollution control agencies, interested citizens, and Perkins were given an opportunity to participate in a discussion of his proposal.

During that meeting, the Board resolved to give Perkins a "letter of support" regarding his proposal. Accordingly, the Board's chairman wrote to state and regional waste management and air pollution agencies in May 1990 that the Board had "voted to support" the Perkins proposal to locate "a medical waste

incinerator in Bland County."  Also, pursuant to a Board resolution adopted on May 21, 1990, and the provisions of Code § 10.1-1408.1(B)(1), the chairman sent a "certification" to the State Department of Waste Management that "the location and operation of a medical waste incinerator in Bland County by Mr. Michael Perkins is in accordance with all local ordinances."

Relying on the Board's actions, CaseLin: (1) purchased land in December 1990 for the location of its proposed medical waste incinerator from the Bland County Development Corporation; (2) contracted with its grantor to build an access road into the grantor's recently platted industrial park for CaseLin's use and that of future lot owners; and (3) applied for the required state air pollution and waste management agency approvals. Citing the Board's April 1990 resolution to write a letter of support, the Board chairman joined in the deed from the Bland County Development Corporation to CaseLin, purportedly on behalf of the Board, to "irrevocably acknowledge and confirm [CaseLin's] right . . . to use the . . . land . . . as a medical waste incinerator facility."  After CaseLin purchased the land, the county administrator wrote letters to the state air pollution and waste management agencies on February 25, 1991, stating that "Bland County is anxiously awaiting [their] completion of [CaseLin's] permit application reviews."

2

However, citizens opposing the proposed incinerator appeared before the Board on March 25, 1991, and asked for an additional public hearing on the issue. At two Board-scheduled public meetings held in the following months and attended by CaseLin officials, it appeared that a large number of citizens opposed the plan. Consequently, at the second meeting the Board voted to "rescind" its April 1990 resolution of support and so notified the Department of Waste Management, the Air Pollution Control Board, and other state and regional officials.

Despite the Board's rescission of its support, CaseLin continued to actively pursue the required state approvals until the General Assembly imposed a moratorium on state approval from April 1992 until December 1993. 1992 Va. Acts, c. 751, p. 1151 (imposition); 1993 Va. Acts, c. 721, p. 1009 (termination). Although CaseLin resumed its active pursuit of the required state approvals, it had not secured them by the time the county enacted its comprehensive zoning ordinance on July 21, 1995, more than 18 months after the moratorium ended. At that time, CaseLin's property was zoned as a part of an agricultural district in which its incinerator was not a permitted use.

In the 54-month period between its acquisition of the property in December 1990 and the enactment of the zoning ordinance in July 1995, CaseLin had a number of surveys conducted on the property and cleared a minimum amount of brush

3

and trees to enable it to establish "a road to go in to do soil and geo-technical boring." The record does not indicate whether this work was done before or after the Board withdrew its support in May 1991.

On July 31, 1995, the county's zoning administrator notified CaseLin of the enactment of the zoning ordinance and of his decision that CaseLin did not have a vested right to use its property for construction and operation of a medical waste incinerator. CaseLin appealed that decision, and the subsequent denial of its applications for permits to build the incinerator, to the Board of Zoning Appeals (the BZA). Upon the BZA's affirmation of both decisions, CaseLin appealed to the circuit court. The appeals were consolidated by the court and heard on the records certified by the BZA.

In a written opinion, the court concluded that because CaseLin had acquired a vested right to use its property in the operation of a medical waste incinerator prior to the adoption of the zoning ordinance, the BZA's decision was "void and of no effect." The BZA appeals the circuit court's final judgment entered in conformity with that opinion.

We begin with a discussion of property rights in relation to zoning. Privately held land is subject to applicable local zoning ordinances whether enacted before or after the property was acquired. Generally, landowners have no property right in

4

anticipated uses of their land since they have no vested property right in the continuation of the land's existing zoning status.  Snow v. Amherst County Bd. of Zoning Appeals, 248 Va. 404, 408, 448 S.E.2d 606, 608-09 (1994); Town of Vienna Council v. Kohler, 218 Va. 966, 976, 244 S.E.2d 542, 548 (1978). However, in limited circumstances, private landowners may acquire a vested right in planned uses of their land that may not be prohibited or reduced by subsequent zoning legislation. See Holland v. Board of Supervisors, 247 Va. 286, 290-91, 441 S.E.2d 20, 22-23 (1994).

The limited circumstances are outlined in a "bright line test" which enables such landowners to determine the point at which they have acquired a vested right.  Town of Rocky Mount v. Southside Investors, Inc., 254 Va. 130, 132, 487 S.E.2d 855, 856 (1997); Holland, 247 Va. at 292, 441 S.E.2d at 23.  The test is as follows:

> [A] landowner who seeks to establish a vested property right in a land use classification must identify a significant official governmental act that is manifested by the issuance of a permit or other approval authorizing the landowner to conduct a use on his property that otherwise would not have been allowed.  Additionally, and equally important, our test requires that the landowner establish that he has diligently pursued the use authorized by the government permit or approval and incurred substantial expense in good faith prior to the change in zoning.

Snow, 248 Va. at 407, 448 S.E.2d at 608 (emphasis added).

5

The parties do not dispute the evidence as to their respective actions with relation to the sole issue in this case: whether those actions were sufficient to vest a property right in CaseLin. Because the proper application of the test to the governmental acts in this case poses a question of law, we do not accord a presumption of correctness to the trial court's decision. Board of Supervisors v. Omni Homes, Inc., 253 Va. 59, 65-66, 481 S.E.2d 460, 463, cert. denied, ___ U.S. ___, 118 S.Ct. 58 (1997); see also Town of Rocky Mount, 254 Va. at 133, 487 S.E.2d at 857.

CaseLin has not obtained any governmental permit to build and operate its incinerator. However, it claims, and the BZA denies, that the Board's actions represented "other approval" and constituted the "significant governmental act" required under our bright line test.

CaseLin correctly notes on brief that we have never defined the term "other approval" as used in the test. However, a review of the other language we have used in establishing the test, related statutes, and our prior cases gives some indication of the parameters of the term.

The term "other approval" is used in the context of the identification of a "significant official governmental act that is manifested by the issuance of a permit or other approval." "Significant official governmental act," "issuance," and

6

"permit," coupled with the word "or" imply that such "approval" is of similar character and formality as a "permit."

Furthermore, statutes dealing with related subjects suggest that sufficient "approval" requires some formality. Code § 10.1-1442(C), which envisions a hazardous waste facility siting agreement with local governing bodies that is "binding . . . in any court of competent jurisdiction," Code § 10.1-1438(A)(3), requires such an agreement to be "executed by the signatures of . . . the chief executive officer of the host community, who has been so directed by a majority vote of the local governing body." Code § 15.1-475(B)(1) (now Code § 15.2-2259) requires that local commissions act on proposed subdivision plats "officially submitted for approval." Under Code § 15.1-11.02 (now Code § 15.2-929), governing bodies are required to "grant or deny siting approval" of solid waste facilities within 120 days of their submission.

Our rejection of a number of claims of "approval" within the meaning of the test gives further evidence that the scope of an "approval" is limited to an official response to a detailed request for a use of a particular property that would not otherwise be allowed under the law. Neither the granting of a variance nor the previous rezoning of particular property is a sufficient manifestation of "approval" under the bright line test. See Snow, 248 Va. at 408, 448 S.E.2d at 608-09 (grant of

7

variance); Town of Rocky Mount, 254 Va. at 133, 487 S.E.2d at 857 (zoning classification change).  Similarly, the partial processing of a proposed and filed subdivision plat and site plan does not constitute the necessary "approval."  Town of Stephens City v. Russell, 241 Va. 160, 164, 399 S.E.2d 814, 816 (1991).  Nor are informal assurances of future approval made by individual board members and the county administrator sufficient to demonstrate "approval" under the test.  Notestein v. Board of Supervisors, 240 Va. 146, 151-52, 393 S.E.2d 205, 207-08 (1990).

With these considerations in mind, we consider the actions of the county asserted by CaseLin as evidence of the required approval.  The April 1990 resolution stated only that the Board resolved to write a letter of support, not that the Board had approved a specific proposal regarding the operation of a medical waste incinerator.  Cf. Town of Rocky Mount, 254 Va. at 133, 487 S.E.2d at 857 (significant governmental act authorizes specific use to be made of the property).  Rather, the resolution was merely a short-lived expression of the Board's enthusiasm for the project which was later withdrawn in the face of public criticism.

The letters to the state agencies were simply statements of the Board's general support of the plan, not a specific authorization of the project.  Moreover, the administrator's certification that the location and operation of the planned

8

incinerator were in accordance with the local ordinances was nothing more than a statement of the facts existing at that time, not an authorization to proceed. Accordingly, we hold that the April 1990 resolution and the May 1990 letters of the Board and county administrator to the state agencies were not an "approval" of CaseLin's planned incinerator within the meaning of the test.

However, CaseLin also contends that such an approval is contained in the deed to CaseLin which states that the Board "irrevocably acknowledge[d] and confirm[ed] the right of [CaseLin] to use the herein described parcel of land . . . as a medical waste incinerator facility." We find no merit in this contention.

Nothing in the Board's April 1990 resolution of general support for the project authorized the chairman to bind the Board to CaseLin's "irrevocabl[e]" right to use the land for the incinerator. Therefore, the chairman could not bind the Board as its agent. See Leachman v. Board of Supervisors, 124 Va. 616, 621, 626-27, 98 S.E. 656, 658, 659 (1919) (chairman not board's agent to sign unauthorized checks).

For these reasons, we conclude that CaseLin failed to secure governmental approval sufficient to acquire a vested right to construct and operate a medical waste incinerator. Our decision makes unnecessary a consideration of whether CaseLin

9

has established the other elements required to create its asserted vested property right.[*]

Accordingly, we will reverse the judgment of the trial court and enter final judgment for the Board of Zoning Appeals of Bland County.

<u>Reversed and final judgment</u>.

---

[*] Additionally, we do not consider what effect, if any, Code § 10.1-1408.1(F) may have had on this case because the issue was not raised by either party. Code § 10.1-1408.1(F) provides:

> There shall exist no right to operate a landfill or other facility for the disposal, treatment or storage of nonhazardous solid waste or hazardous waste within the Commonwealth. Permits for solid waste management facilities shall not be transferable except as authorized in regulations promulgated by the Board. The issuance of a permit shall not convey or establish any property rights or any exclusive privilege, nor shall it authorize any injury to private property or any invasion of personal rights or any infringement of federal, state, or local law or regulation.