## CIRCUIT COURT OF LOUDOUN COUNTY

In re Zoning Ordinance Amendments
enacted by the Loudoun County
Board of Supervisors
on January 6, 2003

January 26, 2005

Case No. (Chancery) 03ZOA000-00 (Consolidated Case)
Former Case Nos. (Chancery) 22560, 22574, and 22577

BY JUDGE THOMAS D. HORNE

These cases came to be heard upon the vested rights claims of Gilberts Corner, L.P., Burke & Herbert B. & T. Co. et al., and Salvatore J. Cangiano-Dominion Knolls. Gilberts Corner, L.P., nonsuited the matter. Burke & Herbert B. & T. Co. et al. and Salvatore J. Cangiano-Dominion Knolls (Complainants) contend that the issuance of Health Department well and drainfield permits preliminary to the submission of a preliminary subdivision plat constitutes a significant affirmative governmental act entitling them to a vested right in certain specified land development projects initiated prior to the enactment of the January 6, 2003, Loudoun County Zoning Ordinance Amendments effective January 7, 2003.

The centerpiece of the vesting claims of the Complainants is the unique provision of the Loudoun County, Virginia, Land Subdivision and Development Ordinance that requires governmental approvals of potable water sources and wastewater treatment methods for subdivision lots prior to preliminary plat submission. Section 1245.10 of the Ordinance expressly provides that:

[n]o preliminary plan of subdivision shall be approved where a well and/or sewage disposal system is to be provided by for each building lot in the subdivision, until written approval of the proposed locations for such systems has been secured from the Health Director. Such approved locations shall be shown to scale on the preliminary plan and on the record plat.

The Health Director, or his designee, shall review and approve or deny the applicant's proposal for wells and sewage proposal systems and shall advise the Commission of its findings. The groundwater source must be an approved source of supply reasonably calculated to be capable of furnishing the needs of the eventual inhabitants of the subdivision. The Health Director, or his designee, may require geotechnical or other tests to determine the suitability of the soil for subsurface disposal; and may require hydrogeologic or other tests to determine the adequacy of the groundwater supply for the proposed use or uses. Hydrogeologic tests shall be in conformance with Section 6.600 of the *Facilities Standard Manual,* which is incorporated herein by reference. Geotechnical, hydrologic, and/or other tests shall be the responsibility of the developer, with supervision by the Health Director.

Loudoun County, Va., Land Subdivision and Development Ordinance § 1245.10.

Loudoun County is permitted by the General Assembly to add "[a] requirement for the furnishing of a preliminary opinion from the applicable health official regarding the suitability of a subdivision for installation of subsurface sewage disposal systems where such method of sewage disposal is to be utilized in the development of a subdivision." Va. Code Ann. § 15.2-2242(2). The Attorney General clarified the legislative intent behind the provisions requiring hydrogeologic testing, stating that the "declared legislative intent of Chapter 11 is to promote the public health, safety, and general welfare, to plan for future development of communities, and to ensure adequate transportation and utility facilities." 1997 Ops. Va. Att'y Gen. 70 at 6 (referencing Va. Code Ann. § 15.1-427). In addition, the Attorney General goes on to conclude that "a county may enact regulations requiring reasonable assurance that each lot in a new subdivision will receive an adequate supply of water." *Id.* at 7.

The Complainants place particular emphasis on the cost and time expended to obtain approvals for each of the necessary sewage disposal

systems, wells, and hydrogeological studies which requires test wells on 50% of the proposed lots in the proposed subdivision. They base their argument on historical data asserting a greater probability of preliminary subdivision plat approval should the necessary studies and permits be approved by the Health Department. The Complainants argue that as a result of Health Department approvals, a subdivision applicant can be virtually assured of "house siting" and "lot layout," and the remaining steps in the preliminary subdivision plat process are merely "routine." Thus, by obtaining approvals for the hydrogeological studies and well permits, the Complainants maintain that they have obtained significant affirmative governmental acts that give rise to a vested right in their "specific projects."

Contrariwise, the Board notes that the "specific project" sought to be developed in each of these two cases is a subdivision of land and that a number of other governmental reviews follow the submission of the preliminary plat. Following the submission of the preliminary subdivision plat, both the Planning Commission and the Director of the Department of Building and Development must review and approve or disapprove the proposed plat. Once the Director reviews the preliminary plat and deems it "officially submitted," the Director is then permitted to distribute the preliminary plat for a staff review by County, State, or Federal agencies, incorporated municipalities within one mile of the proposed subdivision, and any public utilities affected by the proposed subdivision. Loudoun County, Va., Land Subdivision and Development Ordinance § 1243.06-.07. The Board also notes the fluid nature of the subdivision process resulting in changes to individual lot boundaries and the specific statutory commands respecting the interrelationship between the subdivision review process and the concept of vesting.

Vested rights is a concept well grounded in Virginia jurisprudence. Recent statutory changes have sought to clarify specific instances in which a vested right in a specific project may trump zoning ordinance changes.

> Without limiting the time when rights might otherwise vest, a landowner's rights shall be deemed vested in a land use and such vesting shall not be affected by a subsequent amendment to a zoning ordinance when the landowner (i) obtains or is the beneficiary of a significant affirmative governmental act which remains in effect allowing development of a specific project. . . .
> For purposes of this section and without limitation, the following are deemed to be significant affirmative governmental acts allowing development of a specific project: (i) the governing body

has accepted proffers or proffered conditions which specify use related to a zoning amendment; (ii) the governing body has approved an application for a rezoning for a specific use or density; (iii) the governing body or board of zoning appeals has granted a special exception or use permit with conditions; (iv) the board of zoning appeals has approved a variance; (v) the governing body or its designated agent has approved a preliminary subdivision plat, site plan, or plan of development for the landowner's property and the applicant diligently pursues approval of the final plat or plan within a reasonable period of time under the circumstances; or (vi) the governing body or its designated agent has approved a final subdivision plat, site plan, or plan of development for the landowner's property.

Va. Code Ann. § 15.2-2307. Thus, six enumerated situations have been deemed by the legislature to be significant affirmative governmental acts, that, when relied upon by the developer and diligently pursued at some expense to the landowner, warrant development in accordance with prior zoning. Moreover, the General Assembly has expressed its intent, by including the "without limitation" language, that the six situations are not exhaustive and that other significant governmental acts may be relied upon to obtain a vested interest in a particular project. The Complainants contend that the hydrogeologic report, well, and drainfield approvals combined with a "proposed subdivision certification letter" in the instant case fall within this expanded concept of significant governmental acts.

However, in their argument, the Complainants confound the concept of vested rights as applied to a specific project with that of a vested right in a specific zoning classification. It is well established that landowners do not have a "vested property right in the continuation of the[ir] land's existing zoning status." *Board of Zoning Appeals v. CaseLin Systems, Inc.*, 256 Va. 206, 210 (1998) (citing *Snow v. Amherst County Bd. of Zoning Appeals*, 248 Va. 404, 408 (1994)). While a vested right in a specific project may give rise to an entitlement to development contrary to properly enacted zoning provisions, lacking such a specific project, the expenditure of funds in connection with land development does not entitle one to a vested right to the application of certain zoning provisions.

In the instant case, the projects that the Complainants sought to develop involved a subdivision of land. In connection with the identification of a specific governmental act necessary to vesting in a land subdivision context, the General Assembly has specifically referenced preliminary plat approval as

the earliest point in the overall review process when vesting may occur. As the Board correctly argues, the original version of the 1998 amendments to Va. Code Ann. § 15.2-2307 allowed a landowner's rights to be deemed "vested in his zoning . . . when . . . the landowner in good faith has filed a preliminary or final plat or plan of subdivision . . . and he has materially changed his financial position in reliance on that plat or plan." Senate Bill 570 (offered Jan. 26, 1998). The final version of Va. Code Ann. § 15.2-2307 makes no mention of a landowner obtaining a vested right upon "filing" a preliminary plat. As previously noted, an *approved* preliminary subdivision plat will qualify as a significant affirmative governmental act to allow the development of a specific project. The absence of further qualifying language with respect to such a process would suggest a legislative intent to exclude earlier subdivision reviews and approvals in the unspecified significant governmental acts. Additionally, while the County may require drainfield, well approvals, and a "proposed subdivision certification letter" from the Health Department prior to submission of the preliminary plat, they lack the comprehensive review by the Planning Commission, the Department of Building and Development, and the additional "staff reviews" represented by the approval of the preliminary plat. *CaseLin* held that "the partial processing of a proposed and filed subdivision plat and site plan does not constitute the necessary approval." 256 Va. 206, 212 (citing *Town of Stephens City v. Russell*, 241 Va. 160, 164 (1991)). Therefore, until a preliminary plat is submitted and approved by all applicable agencies and not just the Health Department, there is no basis for a significant affirmative governmental act.

The instant vested rights claims can be resolved on the motions to strike and for summary relief requested by the County. Based on the lack of any evidence of a significant affirmative governmental act necessary to support a vested rights claim in these specific projects, the motions of the County are granted and the vested rights claims contained in the specified counts of the respective bills of complaint are denied.

REPORTER'S NOTE: For further proceedings in this case, see *Gas Mart Corp. v. Loudoun County Supervisors*, 269 Va. 334 (2005).