Present: Hassell, C.J., Lacy, Keenan, Koontz, Lemons, and
Agee, JJ., and Russell, S.J.

ALEXANDRIA CITY COUNCIL, ET AL.

v.  Record No. 061028     OPINION BY JUSTICE ELIZABETH B. LACY
                                    April 20, 2007
MIRANT POTOMAC RIVER, LLC, ET AL.

        FROM THE CIRCUIT COURT OF THE CITY OF ALEXANDRIA
              Frank J. Hoss, Jr., Judge Designate

     In this appeal, the City of Alexandria asks us to reverse

the circuit court's judgment declaring the 2004 Text Amendment

to the City's zoning ordinance invalid and reinstating two

auxiliary special use permits (SUPs) issued to Mirant Potomac

River, LLC, (Mirant) in conjunction with the operation of an

electricity generating plant (the Plant).  As discussed below,

we conclude that the Text Amendment violated Code § 15.2-2307

because it impaired an established vested right to operate the

Plant.  We also conclude that the circuit court did not err in

holding that the revocation of the two auxiliary SUPs was

unlawful.  For these reasons, we will affirm the judgment of

the circuit court.

                    Facts and Proceedings

     Mirant is the owner and operator of the Plant, a coal-

fueled power plant located in the City of Alexandria.  The

Plant began operations in October 1949.  The City enacted a

zoning ordinance in 1963 which designated the Plant site as

"Industrial."  In 1989, the City granted the Plant's previous

owner, Potomac Electric Power Company, two auxiliary SUPs for the construction of a building addition to house administrative offices and for a Transportation Management Plan. In 1992, the City adopted its current zoning ordinance and Master Plan. Under this comprehensive plan the Plant site was designated a Utilities and Transportation (UT) Zone. Electric plants were permissible uses in the UT Zone, however, the plants were designated "nonconforming uses" and were required to obtain comprehensive SUPs to operate. The Plant was exempt from the comprehensive SUP requirement because the ordinance designated the Plant as a "noncomplying" use. Zoning Ordinance § 12-301 (June 24, 1992).

Throughout the next decade, the City approved the construction of additional residential units in the vicinity of the Plant. As a result, the Plant is currently bounded on the East by the Potomac River, on the West by an electric transmission facility, and is otherwise surrounded by residential and commercial uses.

In August 2003, two private individuals living near the Plant prepared and submitted a report to the City outlining their concerns about possible adverse health effects associated with Plant emissions. The report was based on a modeling study of Plant emissions conducted by an environmental consulting firm hired by the private citizens.

The study concluded that there was a high probability of adverse effects from the Plant's operations and that Plant emissions likely exceeded National Ambient Air Quality Standards.

After receipt of this report, the City retained experts to conduct additional studies of the impact of Plant-related emissions. Dr. Jonathan Levy of the Harvard School of Public Health concluded that the Plant was the single largest contributor of $PM_{2.5}$, a specific type of fine particulate matter emissions, in the City. Maureen Barrett, an environmental engineer, conducted an air quality analysis and qualitatively concluded the Plant had an adverse effect on the health of the surrounding communities. Barrett also provided the City with an overview of other scientific studies conducted since 1992 that documented the negative health effects of power plant emissions.

In May 2004, after concluding the Plant's operations were not compatible with the City Council's long-term plan for Alexandria, the City Manager and his staff prepared a series of proposed policies and goals regarding the Plant, including cessation of all Plant operations and removal of Plant facilities from the City. At the City's request, outside counsel provided the City with a memorandum identifying several potential actions the City could undertake to achieve

3

these goals. These actions included revoking Mirant's existing auxiliary SUPs and amending the City's zoning ordinance to change the status of the Plant from "noncomplying" to "nonconforming." Specifically, counsel suggested in the memorandum that the auxiliary SUPs could be revoked on the basis of Mirant's purported violations of certain emission control limits in its state-issued Stationary Source Permit to Operate, which would constitute a violation of the Clean Air Act, 42 U.S.C. §§ 7401 et seq. In the memorandum, counsel also suggested a text amendment to the City's zoning ordinance that would change the Plant's designation to "nonconforming" and require Mirant to obtain a comprehensive SUP to continue operating the Plant.

The City Council then adopted Resolution No. 2111, which stated "public necessity, convenience, general welfare or good zoning practice requires consideration of a Text Amendment to revoke the noncomplying use status of certain heavy industrial uses which have not obtained a special use permit as required by current law, and categorize such uses as nonconforming uses." The Resolution referred the Text Amendment to the City Planning Commission for consideration and public hearing. The Planning Commission also considered the revocation of Mirant's existing auxiliary SUPs.

The City Council and the Planning Commission held several public hearings on the adoption of the Text Amendment and revocation of the auxiliary SUPs. Ultimately, the Planning Commission recommended adoption of the Text Amendment and revocation of the auxiliary SUPs. On December 18, 2004, the Mayor and City Council unanimously ratified the recommendations.

The Text Amendment stated, in relevant part:

> Notwithstanding any contrary provision of this ordinance, any electrical power generating plant in existence on December 18, 2004, which produces power through the combustion of coal, and is located in a zone in which such use is neither a permitted or special use permit use, or in a zone in which such use is a special use permit use but for which a special use permit for the entire use, including power generation, has not been granted, shall be deemed a nonconforming use, and shall be subject to abatement as provided in Section 12-214(A) of this ordinance.

Zoning Ordinance § 12-216(A).

The abatement provision in § 12-214(A) referenced in the Text Amendment provides:

> Promptly upon becoming aware of the existence of a nonconforming use, the director shall notify the property owner and, if different, the property operator of the nonconforming status of such use. The nonconforming use shall be discontinued on or before the expiration of a period of seven years from the date of such notice, unless, prior to the expiration of such period, a special use permit which authorizes the continuation of the nonconforming use has been approved, or the seven-year period has been extended by the city council.

5

Mirant[1] filed a bill of complaint seeking a declaration that the Text Amendment was invalid and that the City's revocation of the two auxiliary SUPs was unlawful and arbitrary and capricious. Following an ore tenus hearing, the circuit court concluded that the Text Amendment was invalid because it violated Dillon's Rule and Code § 10.1-1321.1, violated Code § 15.2-2307, and was piecemeal downzoning that was not supported by changed circumstances. The circuit court also invalidated the City's action revoking the auxiliary SUPs, holding that revocation of such permits for "violation of law" required that the City establish a nexus between the "violation of law" relied upon and the subject matter of the permits in issue, and that the City failed to sustain its burden of proof. The City appealed each of these holdings.

### DISCUSSION

1. Validity of the Text Amendment

We first address the City's contention that the circuit court erred in concluding that the Text Amendment violated the vested rights statute, Code § 15.2-2307. That section states "[n]othing in this article shall be construed to authorize the impairment of any vested right." We have applied the

---

[1] The complaint was jointly filed by Mirant Potomac River, LLC, and Mirant Mid-Atlantic, LLC, (collectively "Mirant"). Mirant Potomac River, LLC, is the owner of the improvements at

6

principle of vested rights on a number of occasions, stating that a landowner acquires a vested property right to conduct a nonconforming use on its property if that use was in existence on the effective date of a zoning ordinance which would make the use nonconforming.  See, e.g., Holland v. Board of Supervisors, 247 Va. 286, 289 n.*, 441 S.E.2d 20, 22 n.* (1994) ("A landowner may . . . acquire a vested property right to conduct a nonconforming use on its property if that use was in existence on the effective date of the zoning ordinance.").

In this case, the property in issue has been used for the operation of a power plant since 1949, at which time the City had no comprehensive zoning.  Thus, a vested right to use the property for operation of a power plant existed at the time of both the 1963 and 1992 zoning ordinances.  Neither of those ordinances affected the exercise of this right.

Unlike the prior zoning amendments, however, the 2004 Text Amendment did affect Mirant's ability to continue operating the Plant.  The question before us is whether the conditions imposed by redesignating the use of the property from noncomplying to nonconforming impaired Mirant's vested right to use the property for the operation of a power plant in violation of Code § 15.2-2307.

the Plant and the permittee under the State Operating Permit. Mirant Mid-Atlantic, LLC is the operator of the Plant.

The City argues that requiring Mirant to secure a comprehensive SUP for continued operation of the Plant beyond seven years was a legitimate exercise of its zoning authority and did not violate Code § 15.2-2307. In the posture of this case, however, we need not decide whether requiring a comprehensive SUP would impair Mirant's vested right to operate the Plant on the property. At trial, in response to the City's argument that Mirant's declaratory judgment action was not ripe for adjudication because Mirant had neither applied for nor been denied a comprehensive SUP, the circuit court held that any attempt by Mirant to acquire an SUP would have been "futile" and, therefore, Mirant did not have to pursue such action before seeking the declaratory judgment.[2] Consequently, the Text Amendment requires that Mirant cease operation of the Plant in seven years. Our review is thus limited to whether this requirement impairs Mirant's vested right to use the property for the operation of the Plant. The answer is obvious; termination of the use allowed by virtue of an established vested right impairs the vested right and therefore violates Code § 15.2-2307. Accordingly, the circuit court's conclusion that the Text Amendment violated Code § 15.2-2307 was correct.

---

[2] This Court did not grant the City's assignment of error on this ruling.

Nevertheless, the City argues that the circuit court's conclusion is in error because § 9.09(g) of the City Charter authorizes the City to terminate nonconforming uses within a reasonable time and, under Code § 15.2-100, provisions of the City Charter supersede Code § 15.2-2307.  Although the City asserts that this argument was presented to the circuit court on three occasions, none of the instances upon which the City relies apprised the circuit court of the position now advanced regarding the application of § 9.09 of the City Charter.

At trial, the City's discussion of City Council of Alexandria v. The Lindsey Trusts, 258 Va. 424, 520 S.E.2d 181 (1999), Code § 15.2-100, and § 9.09(g) of the City Charter was in the context of the City's closing argument supporting the reasonableness of its actions in adopting the Text Amendment, specifically the argument that a seven-year abatement period was reasonable.  The City's objections to the final order, as relevant here, stated only that the circuit court erroneously interpreted Code § 15.2-2307.  At no time was the circuit court asked to hold that the provisions of § 9.09 of the City Charter superseded the requirements of Code § 15.2-2307 and no argument was directed to the source of authority for the City's claim.  Accordingly, we decline to consider this argument because the City makes it for the first time on appeal.  Rule 5:25.

9

In light of our holding that the circuit court correctly held the Text Amendment invalid as a violation of Code § 15.2-2307, we need not address the alternative grounds cited by the circuit court as a basis for its holding regarding the Text Amendment.

### 2. Revocation of Auxiliary Use Permits

In its second assignment of error the City states that the circuit court erred in construing § 11-506(A) of the City Zoning Ordinance to require, as a prerequisite to revocation of a SUP, a violation of "a law having a nexus to the specific purpose of a special use permit, rather than to the overall operations to which the SUP is attached."

Interpretation of a local zoning ordinance, like interpretation of a statute, is a pure question of law, subject to de novo review. Renkey v. County Bd., 272 Va. 369, 373, 634 S.E.2d 352, 355 (2006) (quoting Virginia Polytechnic Inst. v. Interactive Return Serv., 271 Va. 304, 309, 626 S.E.2d 436, 438 (2006)).

Zoning Ordinance § 11-506(A) states:

> After notice and a public hearing, the city council may revoke or suspend any special use permit approved by it upon proof that the holder of the permit has failed to comply with any law, including, without limitation, the conditions subject to which the special use permit was granted.

The City first argues that the phrase "any law" should be given its plain meaning. Adoption of the plain meaning of this phrase would allow revocation of an SUP if its holder violated a local traffic law or federal tax statute. We decline to adopt an interpretation of this legislative enactment that would allow such incongruous results.

The City apparently recognized the difficulties of applying a plain meaning construction to the phrase "any law" because, as expressed in its assignment of error, the City does not seek a plain meaning construction but instead asks that the phrase be construed to mean any law related to the overall operation to which an SUP is connected. This construction, however, is not consistent with the legislative intent of the ordinance.

The ordinance identifies violations of "conditions subject to which the special use permit was granted" as grounds for revocation of the SUP. This provision reflects an intent to base the revocation of the SUP on activities connected to the SUP. The construction advanced by the City does not require any such relationship and thus is inconsistent with the expressed legislative intent. The construction adopted by the trial court, however, does maintain the relationship between the SUP and the offending

11

actions because it requires some nexus between the law violated and the purpose of the SUP.

Nevertheless, the City maintains that its suggested construction of the ordinance should be given deference under the principle that a consistent administrative construction of an ordinance should be given much weight. See, e.g., Trustees v. Board of Zoning Appeals, 273 Va. 375, 381-82, 641 S.E. 2d 104, 107 (2007); Lamar Co., LLC v. Bd. of Zoning Appeals, 270 Va. 540, 547, 620 S.E.2d 753, 757 (2005). Nothing in this record, however, establishes that the construction advanced by the City was a consistent construction of the ordinance or one that had been applied in the past. The City identified two instances in which SUPs were revoked for violation of a law, but both involved violations of the City's zoning law, not a state or federal law. Additionally, neither of those instances appeared to address the interpretation advanced by the City here – that is, a law with a nexus to the overall operation to which the SUP is attached. Accordingly, we reject the City's contention that its interpretation of the zoning ordinance in this case is entitled to deference or great weight.

We conclude that the circuit court did not err in construing the phrase "any law" in § 11-506(A) of the zoning ordinance as any law having a nexus to the purpose of the SUP

12

and, therefore, we will affirm the judgment of the circuit court reversing the City's revocation of Mirant's two auxiliary SUPs.[3]

Affirmed.

---

[3] In its brief the City contends that even if the construction adopted by the circuit court is correct, the SUPs should not have been vacated because the violations upon which the City acted in revoking the permit "did have a nexus to the purpose of the SUPs." We do not address this argument, however, because it is not encompassed in the assignment of error. Rule 5:17(c).